UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY GREER, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DICK'S SPORTING GOODS, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:15-cv-01063-KJM-CKD<br><br>ORDER |

Defendant Dick's Sporting Goods, Inc.'s motion to stay this certified class action, pending the California Supreme Court's answers to two questions certified by the Ninth Circuit, is before the court.[1] For reasons explained below, defendant's motion is DENIED without prejudice.

/////

---

[1] On November 27, 2017, defendant filed a notice of plaintiff's failure to timely respond to defendant's motion to stay and requested the court consider the motion as unopposed. ECF No. 57. That day, plaintiff filed his opposition, ECF No. 58, and filed a declaration explaining the reasons for his untimely filing, ECF No. 59-1. Defendant subsequently responded to plaintiff's opposition on the merits without addressing the timeliness of the filing. ECF No. 61. Preferring to reach the merits and construing defendant's reply as an effective withdrawal of any objection to the timeliness issue, the court declines to consider the motion as unopposed.

1

I. BACKGROUND

The court previously addressed the factual and procedural background of this case in detail in its order granting plaintiff's motion for class certification. Class Cert. Order, ECF No. 45 (April 13, 2017). The court provides a brief summary here.

Plaintiff Jimmy Greer ("plaintiff") filed a class action complaint on March 19, 2015, in the Superior Court of the State of California for the County of Sacramento, alleging defendant Dick's Sporting Goods, Inc. ("defendant" or "DSG") violated several provisions of the California Labor Code and California Business and Professions Code § 17200, *et seq.* Compl., ECF No. 1-1. DSG removed the action to this court on May 15, 2015. Removal Not., ECF No. 1. On October 1, 2015, plaintiff filed the operative first amended complaint. First Am. Comp. ("FAC"), ECF No. 14. On April 13, 2017, the court granted plaintiff's motion to certify two subclasses: (1) a "Security Check Class" arising from plaintiff's claim that DSG employees were required to wait, while off the clock, for inspection of their personal belongings before exiting the store, and (2) a "Business Reimbursement Class," arising from plaintiff's claim that DSG employees were required to purchase apparel but were not reimbursed for their purchases. Class Cert. Order at 1-4.

DSG now seeks to stay this action pending the California Supreme Court's decisions in two cases. In the first case, *Troester v. Starbucks Corp.*, Case No. S234969 ("*Troester*"), the state Court agreed to decide the following question certified to it by the Ninth Circuit:

> Does the federal Fair Labor Standards Act's *de minimis* doctrine, as stated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946) and *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984), apply to claims for unpaid wages under the California Labor Code sections 510, 1194, and 1197?

*Troester v. Starbucks Corp.*, 680 F. App'x 511, 512 (9th Cir. 2016). This court, in its certification order, noted the law is unclear as to whether the federal *de minimis* doctrine applies to California labor cases, and cited the question certified in *Troester*. The court found that even if

/////

the doctrine applies, there would be common questions regarding whether the class satisfied the doctrine's requirements. Class Cert. Order at 12-13.

In the second case, *Frlekin v. Apple*, Case No. S243805 ("Frlekin"), the state Court agreed to decide the Ninth Circuit's certified question:

> Is time spent on the employer's premises waiting for, and undergoing, required exit searches of packages or bags voluntarily brought to work purely for personal convenience by employees compensable as "hours worked" within the meaning of California Industrial Welfare Commission Wage Order No. 7?

*Frlekin v. Apple, Inc.*, 870 F.3d 867, 869 (9th Cir. 2017).

DSG argues the decisions to be rendered in *Troester* and *Frlekin* will be "potentially dispositive" with respect to plaintiff's Security Check Class claims, and thus urges the court to stay this action until those cases are decided. Stay Mem., ECF No. 54-1 at 5.[2] Plaintiff opposes. Stay Opp'n, ECF No. 58. DSG filed a reply. Stay Reply, ECF No. 61. The court submitted the motion without hearing and resolves it here. *See* Dec. 1, 2017 Min. Order, ECF No. 62.

II. LEGAL STANDARD

"A district court has inherent power to control the disposition of the causes on its docket in a manner to promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings that bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The court's inherent power is discretionary. *CMAX*, 300 F.2d at 268 (9th Cir. 1962).

In determining whether a stay is warranted, the court must weigh the competing interests resulting from granting or declining a motion to stay. *Id.* Among the competing interests are (1) the possible damage that may result from granting a stay, (2) the hardship or inequity a party may suffer in being required to go forward, and (3) the orderly course of justice

---

[2] All citations to the parties' briefs refer to ECF page numbers, not the briefs' internal pagination.

3

measured in terms of the simplifying or complicating of issues, proof, and questions of law expected to result from a stay. *Id.* (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-255 (1936)). "[I]f there is even a fair possibility that the stay for which he prays will work damage to some one else," the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255 (verbatim quote). Furthermore, "a stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time." *Leyva*, 593 F.2d at 864; *see Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255). The court weighs the competing interests in this case below.

III. ANALYSIS

    A. Possible Damage

There is "a fair possibility that the stay . . . will work damage to [plaintiff and the class]" in at least three significant ways. *See Landis*, 299 U.S. at 255; *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th. Cir. 2005) (determining party faced a "'fair possibility' of harm . . . ."). First, plaintiff notes that *Troester* and *Frlekin* are of no import to plaintiff's Business Reimbursement Class claims, yet DSG seeks to stay those claims as well as the Security Check Class claims. Stay Opp'n at 4-5. DSG acknowledges the Business Reimbursement Class claims will not be affected by the California Supreme Court's decisions. Stay Reply at 13 n.7. Nonetheless, rather than seeking to stay only the Security subclass claims, DSG seeks to stay the entire action, arguing a partial stay "would likely cause the very hardship the stay was intended to avoid." *Id.* Because staying the Business Reimbursement Class claims would not serve the purpose of awaiting "resolution of independent proceedings that bear upon the case," *see Leyva*, 593 F.2d at 863–64, delaying adjudication of those claims presents a fair possibility of harm.

Second, as to the Security subclass claims, plaintiff argues and DSG concedes that the parties necessarily will conduct "discovery on the amounts of times [class members] spent on security checks" even if the *Troester* Court determines the *de minimis* doctrine does not apply to California Labor Code claims. Stay Opp'n at 6; Stay Reply at 10. Because such discovery is

4

necessary regardless of the outcome in *Troester*, plaintiff argues "the longer this case is stayed, the harder evidence becomes to collect as witnesses' memories fade and documents disappear or get destroyed." Stay Opp'n at 7. DSG contends that plaintiff overstates the risk of harm presented by a stay because "significant discovery has already taken place in this matter, both parties will remain under an obligation to preserve relevant evidence, and Plaintiff has been in possession of the contact information of more than 2,000 class members for years." Stay Mot. at 9-10; Stay Reply at 12. Plaintiff's concern class members' memories may fade is well taken, particularly in light of the open-ended nature of DSG's proposed stay and the need for discovery that "depend[s] on the memories of class member[s] . . . as to lengths of time spent undergoing security checks." *See* Stay Opp'n at 7; *see also Mendez v. Optio Sols., LLC*, 239 F. Supp. 3d 1229, 1235 (S.D. Cal. 2017) (finding "the potential of prejudice to Plaintiff in delaying discovery is likely and severe").

      Third, there is no assurance *Troester* and *Frlekin* will be decided in the near, or reasonably near, future. Nor has DSG suggested a specific timeframe for its requested stay. *See, e.g.*, *Robledo v. Randstad US, L.P.*, No. 17-CV-01003-BLF, 2017 WL 4934205, at *3 (N.D. Cal. Nov. 1, 2017) (granting motion to stay because case pending before U.S. Supreme Court was fully briefed and argued and stay would therefore "likely last no more than a few months while the Supreme Court writes its opinion . . . ."). The California Supreme Court schedules oral argument "[a]fter the justices conclude that they have had sufficient time to consider the matter and that it is ready to be heard," which "typically occurs several months to a year after all briefs on the merits have been filed." *See Supreme Court Practices & Procedures*, The Judicial Branch of California (online resource last reviewed Jan. 8, 2018).[3] The Court then files its written opinion within 90 days of oral argument. *Id.*; *see Lincoln Gen. Ins. Co. v. Ryan Mercaldo LLP*, No. 13-CV-2192 W (DHB), 2015 WL 12672145, at *4 (S.D. Cal. Sept. 14, 2015) (noting informal review of cases filed since 2009 indicated the California Supreme Court took between

---

[3] Unless a permanent electronic link is available, the court declines to adopt a citation convention requiring reference to a lengthy URL. Instead, the court describes the source with detail that it believes will be sufficient to permit independent location of the source.

nine to twenty-six months to answer certified questions). The California Supreme Court's website indicates *Troester* has been fully briefed, but oral argument has not been scheduled. *See Appellate Courts Case Information*, The Judicial Branch of California, *Troester v. Starbucks Corp*, S234969, Case Summary and Docket (online database last reviewed Jan. 8, 2018). Furthermore, briefing in *Frlekin* has just begun, as the opening brief was filed on December 19, 2017 and respondent recently requested a 60-day extension to file an answer. *See id.*, *Frlekin v. Apple*, S243805, Case Summary and Docket (online database last reviewed Jan. 8, 2018). In effect, therefore, DSG seeks an open-ended stay for upwards of two years to allow resolution of the question in *Frlekin*. This too risks possible prejudice to class members whose day in court would be placed on an indefinite hold.

B. Hardship or Inequity

Because there is a fair possibility class members would be harmed by a stay, the court considers whether defendants have presented "a clear case of hardship or inequity in being required to go forward." *See Landis*, 299 U.S. at 255. When weighing the relevant interests, the court is mindful that "[o]nly in rare circumstances will a litigant in one cause be compelled to step aside while a litigant in another settles the rule of law that will define the rights of both." *Id.*

DSG argues a stay is necessary to spare both parties the hardship of proceeding with discovery and dispositive motions under uncertain legal standards, which "may well result in the need to re-depose witnesses, revisit discovery responses, reconsider rulings on dispositive motions, or pursue appeals that could have been avoided" should the California Supreme Court's decisions change the applicable law. Stay Mem. at 11. For example, if the *Troester* Court determines that the *de minimis* doctrine does not apply to California labor law claims, DSG argues the parties will have engaged in needless discovery on two out of three elements of that doctrine: (1) the practical administrative difficulty of recording additional time spent in security checks and (2) the regularity of the additional work. Stay Reply at 10 (acknowledging discovery on amount of time class members spent undergoing security inspections will be necessary, regardless of outcome in *Troester*); *see Lindow v. United States*, 738 F.2d 1057, 1063-64 (9th Cir. 1984) (reciting three elements of federal *de minimis* defense). Likewise, DSG argues the *Frlekin*

6

Court may determine that security inspections constitute "hours worked" regardless of whether such inspections are voluntary, rendering irrelevant the parties' anticipated discovery and motion practice on the voluntariness issue. Stay Mem. at 12.

At this juncture, the court is not persuaded DSG has shown a clear case of hardship that outweighs the risk of harm posed by a stay. Rather, it is well established that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112. Thus, DSG's anticipated defense expenses do not necessarily tip the *Landis* balance in favor of a stay. *See, e.g.*, *Mendez*, 239 F. Supp. 3d at 1234 (finding party requesting stay did "not demonstrate a hardship in moving forward with inevitable discovery and motion practice"). Moreover, to the extent unnecessary discovery and motion practice may pose a hardship to DSG, DSG has not met its burden in articulating that hardship with sufficient particularity.

DSG provides no indication whatsoever of the expected magnitude or cost of anticipated discovery on issues that may be narrowed or mooted by the California Supreme Court's decisions in *Troester* and *Frlekin*. Instead, DSG simply argues its discovery expenses may be for naught and notes that "moving for summary judgment involves extensive depositions, expert studies and reports, all at great cost to the parties . . . ." Stay Reply at 6. These broad representations do not convince the court that DSG faces a clear risk of hardship. For example, because DSG concedes it will inevitably conduct discovery on the time class members spent undergoing security checks, *see* Stay Reply at 10, it is not obvious to the court that discovery on the remaining *de minimis* factors is significant enough to warrant a stay. Furthermore, although DSG argues "the next proceeding" in this matter will be DSG's motion for summary judgment, DSG provides no basis from which the court can infer such a motion is immediately forthcoming, or even that it will be filed before the California Supreme Court issues its decisions in *Troester* and *Frlekin*. *See* Stay Mem. at 11-12. The next proceeding showing on the court's docket is plaintiffs' motion for approval of a class notice and plan, *see* ECF No. 55, and no dispositive motion cutoff has yet been set. Moreover, if a motion for summary judgment were imminent, it is unclear why a stay is necessary to prevent potentially unnecessary discovery. If DSG plans to file

a motion for summary judgment that turns on the *de minimis* doctrine or the voluntariness issue, DSG may renew its motion to stay with more supporting detail than currently provided.

    C.    <u>Simplification of the Issues, Proof, and Questions of Law</u>

Finally, DSG argues a stay would simplify the issues, proof and questions of law by renewing proceedings only after the California Supreme Court has determined the applicability of the *de minimis* doctrine and the voluntariness issue. *Id.* at 12-13.

The court agrees that the California Supreme Court's decisions may bear on the Security Check Class claims and could potentially limit the scope of discovery and issues of law to be adjudicated in this case. Accordingly, this factor weighs in favor of a stay but does not outweigh the other factors for which DSG has failed to meet its burden.

III.    <u>CONCLUSION</u>

DSG has not shown a stay is warranted here. *See Clinton*, 520 U.S. at 708. Accordingly, the motion to stay is DENIED without prejudice. The parties should be prepared to discuss future scheduling at the conclusion of the motion hearing on January 12, 2018, including whether discovery and dispositive motion practice might be timed to achieve efficiencies in light of *Troester* and *Frlekin.*

IT IS SO ORDERED.

DATED: January 9, 2018.

_____
UNITED STATES DISTRICT JUDGE