Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Robert J. Drexler, Jr. (SBN 119119)
Robert.Drexler@capstonelawyers.com
Molly A. DeSario (SBN 230763)
Molly.DeSario@capstonelawyers.com
Jonathan Lee (SBN 267146)
Jonathan.Lee @capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Plaintiff Jimmy Greer

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY GREER, individually, and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>DICK'S SPORTING GOODS, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01063-KJM-CKD<br><br>The Hon. Kimberly J. Mueller<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    May 31, 2019<br>Time:    10:00 a.m.<br>Place:   Courtroom 3 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 31, 2019 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of the above-captioned court, located at 501 I Street, Sacramento, CA 95814, the Honorable Kimberly J. Mueller presiding, Plaintiff Jimmy Greer will, and hereby does, move this Court to:

1.     Preliminarily approve the settlement set forth in the Joint Stipulation of Class Action Settlement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

2.     Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

3.     Appoint ILYM Group, Inc. as the Settlement Administrator; and

4.     Set a hearing date for final approval of the settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Raul Perez; (4) the Joint Stipulation of Class Action Settlement and Release; (5) the Notice of Class Action Settlement; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

This motion is unopposed by Defendant Dick's Sporting Goods, Inc..

Dated:  March 26, 2019                      Respectfully submitted,

CAPSTONE LAW APC

By:  /s/ Robert J. Drexler, Jr.
　　　Raul Perez
　　　Robert J. Drexler, Jr.
　　　Molly DeSario
　　　Jonathan Lee

Attorneys for Plaintiff Jimmy Greer

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.    FACTS AND PROCEDURE ................................................................................... 2

    A.    Overview of the Litigation ........................................................................... 2

    B.    Class Counsel Conducted a Thorough Investigation of the Factual and Legal Issues and Were Thus Able to Objectively Assess the Settlement's Reasonableness ................................................................... 4

    C.    The Parties Settled After Mediation .......................................................... 5

    D.    The Proposed Settlement Fully Resolves Plaintiff's Claims ..................... 6

        1.    Composition of the Settlement Class ............................................... 6

        2.    Settlement Consideration ................................................................. 6

        3.    Release by the Settlement Class ...................................................... 6

III.    ARGUMENT .......................................................................................................... 7

    A.    The Proposed Class Action Settlement Should Receive Preliminary Approval ...................................................................................................... 7

    B.    The Settlement Is the Product of Arms'-Length Negotiations and Is Therefore Entitled to a Presumption of Fairness ....................................... 8

    C.    The Relief Provided by the Settlement is Fair and Reasonable .................. 9

        1.    The Class Settlement Amount is Within the Range of Reasonableness ............................................................................. 10

        2.    The Settlement Provides for an Equitable Method of Allocating Relief to Class Members ............................................................... 16

        3.    The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs ........................................................... 19

    D.    There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members ................................... 20

E.   The Court Should Preliminarily Approve the Negotiated Class
     Representative Enhancement Payment..................................................21
F.   The Proposed Class Notice Adequately Informs Class Members About
     The Case And Proposed Settlement....................................................22
IV.  CONCLUSION..................................................................................23

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945. (N.D.
   Cal. July 21, 2014) ............................................................................................ 16

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................ 8

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .................................................... 9

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) ...................................................... 22

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) .......................................................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. 8

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),
   2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ............................... 9

*In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357 (N.D. Ga. 1979) ........................ 16

*In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19 (W.D. Okla.1972) .......................... 16

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y.
   2004) ................................................................................................................ 11

*In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa.
   2000) ................................................................................................................ 11

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   961 F. Supp. 2d 708 (E.D. Pa. 2014) ................................................................. 9

*In re Tableware Antitrust Litig.,* 484. F. Supp. 2d 1078 (N.D. Cal. 2007) ..................... 10

*In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002) .......................... 16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..................................... 10

*Loud v. Eden Med. Ctr.*, 2013 U.S. Dist. LEXIS 122873 (N.D. Cal. Aug.
   28, 2013) ........................................................................................................... 15

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ...................... 19

*McAtee v. Capital One, F.S.B.*, 479 F.3d 1143 (9th Cir. 2007) ........................................ 19

*Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL
   4142342 ((S.D. Cal. Aug. 4, 2016) ..................................................................9

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal.
   2004)..................................................................................................................11

*Newman v. Stein*, 464 F. 2d 689 (2d Cir. 1972) ....................................................11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........10

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009)...............................10

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24,
   2016)..................................................................................................................10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)...............................19


STATE CASES

*Amaral v. Cintas Corp No. 2*, 163 Cal. App. 4th 1157 (2008).............................15

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ...........................................20

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) .............................................20

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000)..................................19

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ...............................................................19


FEDERAL STATUTES

Fed. R. Civ. P. 23(c)(2) ................................................................................. 22, 23

Fed. R. Civ. P. 23(e)(1)(A)......................................................................................7


STATE STATUTES

Cal. Labor Code § 203............................................................................................15

Cal. Lab. Code § 226(e) .........................................................................................15


SECONDARY AUTHORITIES

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002).............................9

Manual for Complex Litigation (4th ed. 2004) .......................................................... 7, 22, 23

Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil
  Procedure Before Trial, California & 9th Cir. Editions (The Rutter
  Group, 2015) ............................................................................................... 19

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action
  Settlements:  An Empirical Study*, J. of Empirical Legal Studies, Vol. 1,
  Issue 1, March 2004 ....................................................................................... 20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Jimmy Greer seeks preliminary approval of the Joint Stipulation of Class Action Settlement and Release,[1] which if approved, would provide valuable monetary relief for approximately 10,700 current and former employees of Defendant Dick's Sporting Goods, Inc. ("Defendant" or "Dick's") (collectively with Plaintiff, the "Parties").

The basic terms of the Settlement provide for the following:

(1)     A Settlement Class defined as:  All persons who worked at Defendant's California retail stores in non-exempt positions at any time during the period from: (1) March 18, 2011 to January 31, 2015 (the "Security Check Class"); and (2) March 18, 2011 to April 13, 2017 (the "Business Reimbursement Class") (collectively, "Class Members").

(2)     A **non-reversionary** Class Settlement Amount of $2,900,000. The Class Settlement Amount includes:

(a)     A Net Settlement Amount of approximately $1,658,333 (the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, and Class Representative Enhancement Payment) which will be allocated to all Participating Class Members on a pro-rata basis according to the number of weeks that each Class Member worked during the Class Period. **Because the Class Settlement Amount is non-reversionary, 100% of the Net Settlement Amount will be paid to all Participating Class Members.**

(b)     Attorneys' fees not to exceed one-third of the Class Settlement

---

[1] Hereinafter "Settlement Agreement" or "Settlement." Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

Amount (or $966,667) and litigation costs and expenses not to exceed $200,000, to Capstone Law APC ("Class Counsel").

(c)    Settlement Administration Costs, currently estimated at $65,000, to be paid to the jointly selected settlement administrator, ILYM Group, Inc.

(d)    A Class Representative Enhancement Payment of $10,000 to Jimmy Greer for his service on behalf of the Settlement Class and for agreeing to a broader release than those required of other Class Members.

An objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Mark Rudy, Esq., an experienced and well-respected class action mediator, and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement to Class Members—**averaging approximately $155**—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Indeed, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval under federal law and falls within the range of reasonableness. Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Overview of the Litigation

On March 18, 2015, Mr. Greer filed his initial complaint in the Superior Court of California for the County of Sacramento, alleging proposed class claims for unpaid overtime, unpaid minimum wages, wages not timely paid upon termination,

1   unreimbursed business expenses, and unfair competition. On May 15, 2015, Defendant

2   removed the action to the United States District Court for the Eastern District of

3   California. (Declaration of Raul Perez ["Perez Decl."] ¶ 2; *see* Dkt. No. 1.)

4       On July 29, 2016, Mr. Greer filed his motion for class certification as to the off-

5   the-clock security check claim, the expense reimbursement claim, and derivative claims.

6   (Dkt. No. 23.) The same day, Defendant filed a motion to deny class certification. (Dkt.

7   No. 24.) On April 13, 2017, the Court denied Defendant's motion to deny class

8   certification and granted Mr. Greer's motion for class certification as to the following

9   two classes: (1) all non-exempt or hourly paid employees who worked for Defendant in

10  its DSG retail stores within California at any time from March 18, 2011 until January 31,

11  2015 (the "Security Check Class"); and (2) all non-exempt or hourly paid employees

12  who worked for Defendant in its DSG retail stores within California at any time from

13  March 18, 2011 until the date of certification (the "Business Reimbursement Class").

14  (Perez Decl. ¶ 3; Dkt. No. 45.)

15      On April 27, 2017, Defendant petitioned the United States Ninth Circuit Court of

16  Appeals for permission to appeal the order granting class certification. (Case No. 17-

17  80075.) The trial court litigation was stayed pending resolution of the petition. On July

18  28, 2017, the Court of Appeals denied the petition for permission to appeal. (Perez Decl.

19  ¶ 4; (9th Cir. Dkt. No. 7.)

20      On November 10, 2017, Defendant filed a motion to stay the action pending the

21  California Supreme Court's answers to the certified questions in *Frlekin v. Apple*

22  (regarding whether security check time is compensable if an employer is only searching

23  bags voluntarily brought to work) and *Troester v. Starbucks* (regarding whether the

24  federal de minimis standard applies to California law claims for off-the-clock security

25  checks). (Dkt. No. 54.) Plaintiff opposed the motion on November 27, 2017, arguing that

26  the outcome of *Frlekin* would have no bearing on Plaintiff's claims because Defendant's

27  security check policy included searching clothing, and not just bags. (Dkt. No. 58.)

28  Further, Plaintiff argued that the outcome of *Troester* would be purely an issue of

1  damages, and not class certification or liability. (*Id.*) On January 10, 2018, the Court

2  denied Defendant's motion in its entirety, reasoning that the California Supreme Court

3  could take an inordinate amount of time to decide *Frlekin* and *Troester*, and that the

4  prolonged delay would unduly prejudice Plaintiff and the class. (Perez Decl. ¶ 5; Dkt.

5  No. 64.)

6  Simultaneously with Defendant's motion to stay on November 10, 2017, Plaintiff

7  filed a motion for approval of Plaintiff's proposed class notice, wherein class members

8  were allowed to opt out by submitting a form through the mail, and class counsel would

9  pay the cost of class notice administration. (Dkt. No. 55.) Defendant insisted that class

10  members also be allowed to opt out by e-mail or text message, despite the extra cost of

11  allowing those procedures. (Dkt. No. 56.) On February 7, 2018, the Court ordered the

12  dissemination of class notice with some changes dictated by the Court; the parties were

13  to allow opt-out by e-mail, with the additional cost of that procedure borne by

14  Defendant. Class notice was mailed on April 19, 2018. (Perez Decl. ¶ 6; Dkt. No. 66.)

15  **B.    Class Counsel Conducted a Thorough Investigation of the Factual**

16  **and Legal Issues and Were Thus Able to Objectively Assess the**

17  **Settlement's Reasonableness**

18  The Settlement is the product of informed negotiations following extensive

19  investigation by Class Counsel. During this matter's pendency, the Parties thoroughly

20  investigated and researched the claims in controversy, their defenses, and the developing

21  body of law. The investigation entailed the exchange of information pursuant to formal

22  and informal discovery methods, including interrogatories and document requests. In the

23  course of written discovery, Class Counsel received and analyzed several hundred pages

24  of documents, including Defendant's written policies regarding the claims at issue, and a

25  sample of employee time records. (Perez Decl. ¶ 7.)

26  In addition to written discovery, the Parties took a total of 7 depositions:

27  Plaintiff's deposition, Defendant's 30(b)(6) witnesses (Karen Craig and Todd Kraemer),

28  Defendant's employee witnesses (Jason D. Link and Jih Hao Cheng), Plaintiff's expert

1   witnesses (Dr. David Lewin, Ph.D. and Robert Crandall). (Perez Decl. ¶ 8.)

2       Overall, Class Counsel performed an exhaustive investigation into the claims at

3   issue, which included:  (1) determining Plaintiff's suitability as a putative class

4   representative through interviews, background investigations, and analyses of his

5   employment files and related records; (2) evaluating Plaintiff's potential class claims; (3)

6   researching similar wage and hour class actions as to the claims brought, the nature of

7   the positions, and the relevant labor force; (4) analyzing Defendant's labor policies and

8   practices; (5) deposing Defendant's corporate and lay witnesses, and defending

9   Plaintiff's deposition and the depositions of Plaintiff's experts;  (6) researching

10  settlements in similar cases; (7) conducting a discounted valuation analysis of claims;

11  (8) drafting the mediation brief; (9) participating in mediation; and (10) finalizing the

12  Settlement Agreement. The extensive document and data exchanges have allowed Class

13  Counsel to appreciate the strengths and weaknesses of the claims alleged against

14  Defendants and the benefits of the proposed Settlement. (Perez Decl. ¶ 9.)

15      **C.     The Parties Settled After Mediation**

16      After the exchange of relevant information and evidence, the Parties agreed to

17  enter into private mediation in an attempt to resolve the claims in the case.  The

18  mediation took place on December 10, 2018, before Mark Rudy, Esq., an experienced

19  wage and hour mediator.  Mr. Rudy helped to manage the Parties' expectations and

20  provided a useful, neutral analysis of the issues and risks to both sides. Although the

21  Parties did not settle at mediation, Mr. Rudy continued to guide the Parties' toward

22  settlement and eventually issued a mediator's proposal, which recommended the terms

23  of a class action settlement. The Parties eventually accepted Mr. Rudy's proposal and

24  were able to consummate a complete settlement of Plaintiff's claims.  At all times, the

25  Parties' negotiations were adversarial and non-collusive, and the Settlement thus

26  constitutes a fair, adequate, and reasonable compromise of the claims at issue. (Perez

27  Decl. ¶ 10.)

28

1

**D.    The Proposed Settlement Fully Resolves Plaintiff's Claims**

2

**1.    Composition of the Settlement Class**

3    The Settlement Class consists of all persons who worked at Defendant's

4    California retail stores in non-exempt positions at any time during the period from: (1)

5    March 18, 2011 to January 31, 2015 (the "Security Check Class"); and (2) March 18,

6    2011 to April 13, 2017 (the "Business Reimbursement Class"). (Settlement Agreement ¶

7    5.)

8

**2.    Settlement Consideration**

9    Plaintiff and Defendant have agreed to settle all claims alleged in the action in

10    exchange for the Class Settlement Amount of $2,900,000. The Class Settlement Amount

11    includes: (1) a $1,658,333 Net Settlement Amount which will be paid to all Participating

12    Class Members; (2) $966,667 in attorneys' fees and up to $200,000 in litigation

13    costs/expenses to Class Counsel; (3) Settlement Administration Costs of approximately

14    $65,000; and (4) a Class Representative Enhancement Payment of $10,000 to Plaintiff

15    Jimmy Greer for his service on behalf of the Settlement Class and for a general release

16    of all claims arising out of his employment. (Settlement Agreement ¶¶ 2, 7-8, 24, 30.)

17

**3.    Release by the Settlement Class**

18    In exchange for the Class Settlement Amount, Plaintiff and Participating Class

19    Members during the applicable Class Period:

20

**For Security Check Class Members**: any and all claims, rights, demands,
liabilities, and causes of action, arising from, arising in connection to, or

21    relating to, the allegation(s) that Defendant (or any Released Party) failed to
properly compensate employees for security searches during the Security

22    Check Class Period, including (but not limited to) claims for unpaid over or
double time (Labor Code §§ 510 and 1198), minimum wages or straight

23    time (Labor Code §§ 1194, 1197, and 1197.1), off-the-clock work or time
subject to employer's control, failure to pay timely wages during

24    employment or upon termination (Labor Code §§ 201-204), inaccurate
wage statements (Labor Code § 226), violation of California Business &

25    Professions Code §§ 17200, et seq, violation of any Wage Order of the
Industrial Welfare Commission, any related claims for exemplary damages,

26    penalties, and interest, any related claims for attorneys' fees and costs
(excluding any such fees and costs identified in the Settlement Agreement),

27    and/or any other claims, rights, demands, liabilities, or causes of action
which could have been asserted in the Action based on the same or similar

28    factual predicate, under any state, federal or local law; and

**For Business Reimbursement Class Members**: Any and all claims, rights, demands, liabilities, and causes of action, arising from, arising in connection with, or relating to, the allegation(s) that Defendant (or any other Released Party) failed to reimburse for business expenses during the Business Reimbursement Class Period, including (but not limited to) claims for unpaid business-related expenses (Labor Code § 2802), violation of California Business & Professions Code §§ 17200, et seq., violation of any Wage Order of the Industrial Welfare Commission, any related exemplary damages, penalties, or interest, any related claims for attorneys' fees and costs (excluding any such fees and costs identified in this Agreement), and/or any other claims, rights, demands, liabilities, or causes of action which could have been asserted in the Action based on the same or similar factual predicate, under any state, federal or local law.

(Settlement Agreement ¶ 35.)

## III.   ARGUMENT

### A.   The Proposed Class Action Settlement Should Receive Preliminary Approval

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed.  Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps:

1.   Preliminary approval of the proposed settlement;

2.   Notice to the class providing them an opportunity to exclude themselves; and

3.   A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

F.R.C.P. 23(e) provides that if the proposal would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

      (i)     the costs, risks, and delay of trial and appeal;

      (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

The judicial policy favoring settlement of class action suits should guide the Court in evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). As this Circuit has observed, "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

**B.     The Settlement Is the Product of Arms'-Length Negotiations and Is Therefore Entitled to a Presumption of Fairness**

In evaluating the Settlement for preliminary approval, the Court "first considers 'the means by which the parties arrived at settlement.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.* ("*Volkswagen*"), 2016 WL 4010049, \*14 (N.D. Cal. July 26, 2016). "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*

Here, the Parties participated in mediation with Mr. Mark Rudy, a respected mediator of wage and hour class actions. Mr. Rudy helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. A mediator's participation weighs considerably against any inference of a collusive settlement. *See In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),

1    2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*,

2    236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement

3    negotiations helps to ensure that the proceedings were free of collusion and undue

4    pressure.")  At all times, the Parties' negotiations were adversarial and non-collusive.

5            The Parties were represented by experienced class action counsel throughout the

6    negotiations resulting in this Settlement. Plaintiff is represented by Capstone. Capstone

7    employs seasoned class action attorneys who regularly litigate wage and hour claims

8    through certification and on the merits, and have considerable experience settling wage

9    and hour class actions. (*See* Perez Decl. ¶¶ 11-14, Ex. 2.)  Defendant is represented by

10   Sheppard, Mullin, Richter & Hampton LLP, which operates a respected wage and hour

11   defense practice.

12           As this Settlement is the "result of arms'-length negotiations by experienced class

13   counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswage*n, 2016 WL

14   4010049, at *14 (internal citation omitted).

15   **C.     The Relief Provided by the Settlement is Fair and Reasonable**

16           At the preliminary approval stage, the Court evaluates whether the settlement is

17   within the "range of reasonableness," and whether notice to the class and the scheduling

18   of a final approval hearing should be ordered.  *See generally* 3 Conte & Newberg,

19   *Newberg on Class Actions*, § 7.20 (4th ed. 2002).  For preliminary approval, scrutiny of

20   the settlement is reduced.  *In re Nat'l Football League Players' Concussion Injury Litig*.,

21   961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to

22   meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v.*

23   *Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342  (S.D. Cal. Aug. 4,

24   2016).

25           The Court need only review the parties' proposed settlement to determine

26   whether it is within the permissible "range of possible judicial approval" and thus,

27   whether the notice to the class and the scheduling of the formal fairness hearing is

28   appropriate.  Newberg, § 11:25. Preliminary approval should be granted if "the proposed

settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### 1. The Class Settlement Amount is Within the Range of Reasonableness

As discussed in detail below, an objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf—a $2,900,000 non-reversionary total Class Settlement Amount—is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Mark Rudy, Esq., and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Federal district courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F. 2d

689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").[2]

Plaintiff calculated Defendant's maximum potential exposure for the security inspection claim and business expense reimbursement claims, and derivative claims, as follows:

Security Inspection Claim. California law defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 578 (2000). Thus, "an employee who is subject to an employer's control does not have to be working during that time to be compensated." *Id*. at 582. Requiring employees to work without compensation violates California's minimum wage and overtime laws. *See* Cal. Lab. Code §§ 510, 1194, 1197, 1197.1 and 1198. An employer is liable for off-the-clock "hours worked" if it "knew or should have known off-the-clock work was occurring." *Brinker*, 53 Cal. 4th at 1051- 52.

Plaintiff alleges that Defendant employed a California-wide policy of requiring managerial personnel to search all employees before they left store premises, including inspections of jackets and other clothing for employees who were not carrying bags.  On January 31, 2015, Defendant installed time punch terminals at store exits and started paying for this time.

Based on information and evidence produced by Defendant, Plaintiff determined that Class Members worked a total of approximately 880,220 shifts during the period from March 18, 2011 to January 31, 2015. Conservatively estimating that all security checks

---

[2] *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather the percentage should be considered in light of strength of the claims").

during a particular shift lasted on average approximately 6 minutes, Defendant's maximum potential exposure for the security-check claim would be approximately $1.43 million: 880,220 shifts x $16.22 average hourly rate x 0.1-hour duration of security-check = $1,427,717.

Plaintiff determined an appropriate range of recovery for settlement purposes by offsetting Defendant's maximum theoretical liability by: (i) the strength of Defendant's defenses on the merits; (ii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiff's claims; (iii) the risk of losing at trial; (iv) the chances of a favorable verdict being reversed on appeal; and (v) the difficulties attendant to collecting on a judgment (the "Discount Factors").

With respect to affirmative defenses, Defendant argued that security inspections were performed only sporadically at stores, and that Class Members were regularly "waved through" inspection. *See* Dkt. No. 27, Opposition to Plaintiff's Motion for Class Certification ["Opp."] 8:15-20. In support of this contention, Defendant presented evidence that security inspections were not enforced for almost 2 years at its Modesto, California store, but instead left to the Class Members to decide whether they wanted to voluntarily participate. *Id.*

Defendant also argued that there is no violation of California law when an employee voluntarily brings a bag to work since undergoing a bag check does not constitute "hours worked." *Frlekin v. Apple Inc.*, 2015 WL 6851424, at *3 (N.D. Cal. Nov. 7, 2015). *See* Opp. 9:4-6.

Business Expense Reimbursement Claim. Labor Code section 2802 requires employers to "indemnify" employees for "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer[.]" Cal. Lab. Code § 2802. Plaintiff alleges that Defendant failed to reimburse Class Member for clothing expenses, and despite requiring

1   Class Members to wear specific styles of clothing suitable to their assigned department,
2   such as the "Athletic Look," "Golf Look," or outdoorsy "Lodge Look."

3          Based on information and evidence produced by Defendant, Plaintiff determined
4   that Defendant employed approximately 10,700 individuals in non-exempt positions
5   during the Class Period. Conservatively estimating that each Class Member incurred up to
6   $200 in costs for work clothes, Defendant's maximum potential exposure would be
7   $2,140,000.

8          Plaintiff determined an appropriate range of recovery for settlement purposes by
9   offsetting Defendant's maximum theoretical liability by the Discount Factors. With
10  respect to affirmative defenses, Defendant argued that the "majority" of Class Members
11  already owned the attire that they wore to work prior to working for Defendant (*see* Opp.
12  2:26-3:9), and that the "Look Policy" was really intended to serve as "guidance" for
13  what Class Members should wear to work, and was not "not really a policy," and in
14  either event, was not "not enforced." *See* Opp. 3:1-5.

15         Wage Statements. Based on the foregoing allegations, Plaintiffs allege that
16  Defendant issued Class Members wage statements that did not comply with Labor Code
17  section 226(a). Labor Code section 226(a) provides, in pertinent part, that an employer
18  must provide an "accurate itemized" wage statement showing net and gross wages
19  earned. Cal. Lab. Code § 226(a). "[A]n employee has a statutory right to an accurate pay
20  stub." *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010) ("*Jaimez*").
21  "The purpose of the wage statement requirement is to provide transparency as to the
22  calculation of wages. A complying wage statement accurately reports most of the
23  information necessary for an employee to verify if he or she is being properly paid in
24  accordance with the law and that deductions from wages are proper." DLSE Opinion
25  Letter 2006.07.06 at 2. One of the requirements for a legally compliant wage statement
26  is that it includes "the name and address of the legal entity that is the employer." Labor
27  Code § 226(a)(8) (emphasis added).

28         Penalties for wage statement violations are calculated according to the formula

1   provided by Labor Code section 226(e)(1): An employee suffering injury as a result of a

2   knowing and intentional failure by an employer to comply with subdivision (a) is

3   entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial

4   pay period in which a violation occurs and one hundred dollars ($100) per employee for

5   each violation in a subsequent pay period, not to exceed an aggregate penalty of four

6   thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's

7   fees.

8       However, Defendant would have argued (by analogy to case law interpreting

9   penalties under Labor Code sections 201 and 225.5), that it would be improper to assess

10  $100 penalties for "subsequent violations" as there has been no formal finding of any

11  "initial" violations. *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209

12  (2008) ("Although common sense might suggest a "subsequent" violation is nothing

13  more than a violation that occurs at a later point in time after an "initial" violation, this

14  definition is inadequate because the statutes provide for multiple penalties for "each

15  failure to pay each employee" incurred in an initial violation . . . Until the employer has

16  been notified that it is violating a Labor Code provision (whether or not the

17  Commissioner or court chooses to impose penalties), the employer cannot be presumed

18  to be aware that its continuing underpayment of employees is a "violation" subject to

19  penalties.")

20      While Plaintiff does not agree with this interpretation of Section 226(a), he

21  decided to conservatively estimate Defendant's maximum potential exposure for wage

22  statement penalties by assessing a $50 penalty for all pay periods at issue: 27,617 two-

23  week pay periods in the statutory one-year claims period when security inspections were

24  off-the-clock x $50 = $1,380,850.

25      Plaintiff had to discount Defendant's estimated exposure by the strength of its

26  affirmative defenses and the risks of continued litigation.  With respect to the affirmative

27  defenses, defendants commonly argue that, without more, wage statement claims are

28  nothing but technical violations for which Class Members suffer no injury.  Before

Section 226(e) was amended, the dispositive issue was whether "suffering injury" was satisfied by the deprivation of a legal right (i.e., an employer's provision of non-compliant wage statements), or by consequential damages caused by the non-compliant wage statements.  Employers in federal court have prevailed in arguing for the latter interpretation.  Even after the enactment of section 226(e), some courts have held that this amendment merely clarifies existing law and have held that plaintiffs must demonstrate actual injury.  *See Loud v. Eden Med. Ctr.*, 2013 U.S. Dist. LEXIS 122873, **36-53 (N.D. Cal. Aug. 28, 2013) (granting summary judgment on wage statement claim because plaintiff could not show injury due to defects and that incorrect wage information is not willful).

Waiting-Time Penalties. Where an employer "willfully fails" to timely pay wages upon termination of employment, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to thirty days. *See* Cal. Labor Code § 203.

Plaintiff estimated Defendants' maximum potential exposure for 203 penalties at $12,244,072, which was calculated by taking the product of the following: 4,575 former employees during the 3-year SOL x 5.5-hour average shift x $16.22 average hourly wage x 30 days of penalties = $12,244,072.50. Plaintiff recognizes that Defendants would have argued that an employer has a complete defense to a waiting-time penalty claim based on a showing of good faith.  *Amaral v. Cintas Corp No. 2*, 163 Cal. App. 4th 1157, 1204 (2008) ("So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness.")

The Class Settlement Amount Is Fair and Reasonable. In aggregate, Plaintiff estimated Defendant's maximum potential exposure for the claims at issue at approximately $17.2 million.

| Claim | Maximum Potential Amount |
|---|---|
| Security Inspection Claim | $1,427,717.00 |

| Claim | Maximum Potential Amount |
|-------|--------------------------|
| Business Expense Claim | $2,140,000.00 |
| Wage-Statement Claim | $1,380,850.00 |
| Waiting-Time Penalty Claim | $12,244,072.50 |
| **Total** | **$17,192,639.50** |

Taking into account the Discount Factors, and the risks of continued litigation, Plaintiffs determined that a settlement of approximately 17% of Defendant's maximum potential exposure for the class claims was fair and reasonable. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that settlement which amounted to 8% of maximum recovery "[fell] within the range of possible initial approval based on the strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).

**2.     The Settlement Provides for an Equitable Method of Allocating Relief to Class Members**

The Settlement provides for an equitable method of allocating relief to Class Members in proportion to qualifying wage statements received. Formula for Calculating Settlement Payments

Each Class Member's settlement payment will be based on the number of Workweeks the Class Member worked in a non-exempt position during the period from: (1) March 18, 2011 to January 31, 2015, for the Security Check Class ("Security Check Class Period"); and (2) March 18, 2011 to April 13, 2017, for the Business Reimbursement Class ("Business Reimbursement Class Period").  The formula for

1   calculating settlement payments is as follows: Seventy-Five Percent (75%) of the Net

2   Settlement Amount will be allocated to the Security Check Class (the "Security Check

3   Class Fund"), and (2) Twenty-Five Percent (25%) of the Net Settlement Amount will be

4   allocated to the Business Reimbursement Class (the "Business Reimbursement Class

5   Fund").  Each Class Member's respective shares of the Security Check Class Fund and

6   Business Reimbursement Class Fund will be allocated on a pro-rata basis according to

7   the number of Workweeks worked by each qualifying Class Member. Individual

8   Settlement Payments will be reduced by any required deductions for each Participating

9   Class Members as specifically set forth herein, including employer and employee-side

10  tax withholdings or deductions.

11          Security Check Class Fund: Defendant will calculate (or provide sufficient

12  information for the Settlement Administrator to calculate) the total number of

13  Workweeks worked by all Security Check Class Members during the Security Check

14  Class Period. To determine each Security Check Class Member's share of the Security

15  Check Class Fund, the Settlement Administrator will use the following formula: Share

16  of Security Check Class Fund = Workweeks Worked by Security Check Class Member

17  ÷ Workweeks Worked by All Security Check Class Members × Security Check Class

18  Fund.

19          The entire Security Check Class Fund (net of the required tax withholdings and

20  deductions) will be disbursed to all Security Check Class Members who do not submit

21  timely and valid Requests for Exclusion. If there are any valid and timely Requests for

22  Exclusion, the Settlement Administrator shall proportionately increase the payment for

23  each participating Security Check Class Member according to the number of

24  Workweeks worked, so that the amount actually distributed to the Settlement Class

25  equals 100% of the Security Check Class Fund, net of the required tax withholdings and

26  deductions. The Settlement Administrator will remit the required tax withholdings to the

27  applicable taxing jurisdiction.

28          Business Reimbursement Class Fund: Defendant will calculate (or provide

1    sufficient information for the Settlement Administrator to calculate) the total number of

2    Workweeks worked by all Business Reimbursement Class Members during the

3    Business Reimbursement Class Period. To determine each Business Reimbursement

4    Class Member's share of the Business Reimbursement Class Fund, the Settlement

5    Administrator will use the following formula: Share of Business Reimbursement Class

6    Fund = Workweeks Worked by Business Reimbursement Class Member ÷ Workweeks

7    Worked by All Business Reimbursement Class Members × Business Reimbursement

8    Class Fund.

9           The entire Business Reimbursement Class Fund net of the required tax

10   withholdings and deductions, will be disbursed to all Business Reimbursement Class

11   Members who do not submit timely and valid Requests for Exclusion. If there are any

12   valid and timely Requests for Exclusion, the Settlement Administrator shall

13   proportionately increase the payment for each participating Business Reimbursement

14   Class Member according to the number of Workweeks worked, so that the amount

15   actually distributed to the Settlement Class equals 100% of the Business Reimbursement

16   Class Fund, net of the required tax withholdings and deductions. The Settlement

17   Administrator will remit the required tax withholdings to the applicable taxing

18   jurisdiction.

19          The average Individual Settlement Payment is approximately $155.  This is in

20   line with, if not higher than (since many of the wage and hour settlements below released

21   many more claims), many wage and hour class action settlements approved by

22   California state and federal courts.  *See, e.g.*, *Badami v. Grassroots Campaigns, Inc.*,

23   Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of

24   approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861

25   (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi*

26   *v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of

27   approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253

28   (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v.*

1  *Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.)

2  (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No.

3  CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of

4  approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD

5  (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores,*

6  *Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of

7  approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A.

8  Super. Ct.) (average net recovery of approximately $20).

9        **3.**      **The Court Should Preliminarily Approve the Negotiated**

10        **Attorneys' Fees and Costs**

11        At final approval, Class Counsel will request attorneys' fees in the amount of one-

12  third of the total common fund. Under controlling California law,[3] the common fund

13  method for awarding attorneys' fees is appropriate where, as here, attorneys have been

14  instrumental in creating a settlement fund that benefits all class members.  *See Serrano v.*

15  *Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long

16  recognized that when attorneys create a common fund that benefits a class, the attorneys

17  have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*,

18  82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit

19  approach is 'results oriented rather than process-oriented, it better approximates the

20  workings of the marketplace' than the lodestar approach." [citation omitted]).  Although

21        [3] In diversity actions, federal courts look to state law in determining whether a
22  party has a right to attorneys' fees and how to calculate those fees.  *Mangold v. Calif.*
    *Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent
23  has applied state law in determining not only the right to fees, but also in the method of
calculating the fees").  The state law governing the underlying claims in a diversity
24  action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
1047 (9th Cir. 2002).  Because CAFA operates to modify the diversity requirement, "the
25  *Erie* doctrine still applies so that state substantive law governs such claims in federal
court." *See* Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil
26  Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015)
paragraph 10:497.5.  As the Ninth Circuit observed, "even after CAFA's enactment,
27  *Erie*-related doctrines ensure that, for the most part, removal of a CAFA case from state
to federal court produces a change of courtrooms and procedure rather than a change of
28  substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

California has no benchmark, California courts routinely award attorneys' fees equalling approximately one-third of the common fund's total potential value or higher.  *See*, *e.g.*, *Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) (affirming a fee award representing one-third of the common fund); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[S]tudies show that . . . fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements:  An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

Plaintiff will file a formal motion for the negotiated attorneys' fees and costs once preliminary approval of the Settlement is granted.

### D.     There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members

The Court must also ask whether "the Settlement contains any obvious deficiencies" and "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*, 2016 WL 4010049, at **14, 16. This Settlement contains no "glaring deficiencies" *Id*. at *14. The Settlement does not provide for a reversion of unpaid settlement funds to Defendants or distribute a disproportionate share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See id*. at *14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011)).

Moreover, no segment of the Class is given preferential treatment. Plaintiff will also seek, at a later time (when the Motion for Attorneys' Fees is filed), an incentive award in an amount that is well within the range of such awards in the Ninth Circuit for their work on the behalf of the Class, the reputation risk undertaken, and for the execution of a general release. *See infra,* § III.G.  *See*, *e.g.*, *La Fleur v. Medical Management Intern, Inc*., No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to the Class,

1   reputational harm and general release). Accordingly, the Settlement is procedurally fair,

2   adequate and reasonable.

3   **E.     The Court Should Preliminarily Approve the Negotiated Class**

4   **Representative Enhancement Payment**

5       The Settlement provides for a Class Representative Enhancement Payment of

6   $10,000[4] to Jimmy Greer for his service on behalf of Class Members and for agreeing to

7   a broader release than those required of other Class Members. "Incentive awards are

8   fairly typical in class action cases . . . Such awards are discretionary and are intended to

9   compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v.*

10  *West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et*

11  *al., Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an

12  inducement to participate in the suit and as compensation for time spent in litigation

13  activities. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (describing the service

14  award as an incentive to the class representatives); *Matter of Continental Illinois*

15  *Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award

16  should be in such an amount "as may be necessary to induce [the class representative] to

17  participate in the suit").

18      Plaintiff will file a formal motion for the negotiated Class Representative

19  Enhancement Payment once preliminary approval of the Settlement is granted.

20

21      [4] The amounts of the requested incentive award is also reasonable by reference to

22  the amounts that district courts in this Circuit have repeatedly found to be reasonable for
    wage and hour class action settlements. *See, e.g., Bernal v. Davita, Inc.*, Case No. 5:12-

23  cv-03255-PSG, *2 (N.D. Cal, Jan. 14, 2014) ($10,000 incentive payment in $3.4 million
    wage-and-hour class settlement); *York v. Starbucks Corp*., No. 08-07919 GAF, Dkt. No.

24  239, at *4 (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a $3
    million wage-and-hour class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI,

25  2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) (approving enhancement
    awards of $20,000 each to four class representatives in a $3.5 million settlement of an

26  employment class action); *Stevens v. Safeway, Inc*., No. 05-01988, 2008 U.S. Dist.
    LEXIS 17119, **34-37 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 award);

27  *Amochaev v. Citigroup Global Markets, Inc*., No. 05-1298 PJH (N.D. Cal. Aug. 13,
    2008) (approving enhancement awards of $50,000 and $35,000 to employees in light of

28  factors that included fear of workplace retaliation).

1
2

      **F.**    **The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement**

3
4
5
6
7
8
9
10
11

      The proposed class settlement notice and claims administration procedure satisfy due process. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the litigants to provide Class Members with the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974). Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." *Id.* Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id.* at 175.

12
13
14
15
16
17
18
19
20
21
22

      The Notice of Class Action Settlement ("Class Notice") was jointly drafted and approved by the Parties and provides Settlement Class Members with all required information so that each member may make an informed decision regarding his or her participation in the Settlement. The Class Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit Request for Exclusions or objections; the date for the final approval hearing; the formula used to calculate settlement payments; a statement that the Court has preliminarily approved the settlement; a statement that Class Members will release the settled claims unless they opt out; and noticed of pending lawsuits with overlapping claims. Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

23
24
25
26
27
28

      The Class Notice summarizes the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*, *supra*, that "the notice should be accurate, objective, and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211.  The Notice Packet states that the Settlement does not constitute an admission of liability by Defendants, and that Final Approval has

yet to be made. The Notice Packet thus complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Rule 23(c)(2) and (e); *Manual* §§ 8.21, 8.39; 30.211, 30.212.

The Settlement Administrator will mail the Class Notice to all Settlement Class Members via first class United States mail. (Settlement Agreement ¶ 39.)  In the event Notice Packets are returned as undeliverable, the Settlement Administrator will attempt to locate a current address using, among other resources, a computer/SSN and "skip trace" search to obtain an updated address. (*Id.* at ¶ 40.)  This method was negotiated by the Parties to maximize the Class Member notification rate while ensuring cost effective administration of the Settlement.

## IV.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately presented the materials and information necessary for preliminarily approval, the Parties request that the Court preliminarily approve the settlement.

Dated:  March 26, 2019                         Respectfully submitted,

CAPSTONE LAW APC

By:  /s/ Robert J. Drexler, Jr.
Raul Perez
Robert J. Drexler, Jr.
Molly DeSario
Jonathan Lee

Attorneys for Plaintiff Jimmy Greer

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT