UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY GREER,<br><br>    Plaintiff,<br><br>    v.<br><br>DICK'S SPORTING GOODS, INC.,<br><br>    Defendant. | Case No. 2:15-cv-01063-KJM-CKD<br><br><br>ORDER |

Following the court's certification of two classes and distribution of class notices, the parties in this class action reached a proposed settlement. Plaintiff now moves for preliminary approval of the parties' settlement agreement. The motion is unopposed. As explained below, the court GRANTS the motion.

I.    BACKGROUND

Plaintiff Jimmy Greer filed this class action on March 19, 2015, alleging defendant Dick's Sporting Goods, Inc. ("DSG") violated multiple provisions of the California Labor Code and California Business and Professions Code section 17200. Compl., ECF No. 1-1; ECF No. 1 (May 15, 2015 removal); First Am. Compl., ECF No. 14 (filed Oct. 1, 2015). On April 13, 2017, the court granted Greer's opposed motion for class certification, certifying the following two classes: (1) a "Security Check Class" arising from Greer's allegations that DSG employees were required to wait, while off the clock, for inspection of their personal belongings before exiting the store, and (2) a "Business Reimbursement Class," arising from Greer's claim that DSG employees

were required to purchase apparel but were not reimbursed for their purchases. Class Cert. Order, ECF No. 45. On July 28, 2017, the Ninth Circuit denied DSG's petition for permission to appeal the court's class certification order. ECF No. 51. This court then denied DSG's motion to stay the case pending the California Supreme Court's resolution of two questions certified to that court by the Ninth Circuit. ECF No. 54 (motion to stay); ECF No. 64 (order). After resolving the parties' disagreements and requiring several changes, on March 15, 2018, the court approved the class notice, exclusion form and notice plan. ECF Nos. 55, 56, 61, 66, 68, 70−72.

On March 26, 2019, Greer moved for preliminary approval of his settlement with DSG. Mot., ECF No. 73. Under the proposed settlement agreement, DSG would pay a gross settlement amount of $2,900,000. Mot. at 8.[1] From this gross settlement amount, Greer seeks an attorneys' fee award of 33 percent of the gross settlement ($966,667) and $200,000 in expenses; $65,000 in settlement administration costs; and a $10,000 incentive payment for Greer's service as a class representative "and for agreeing to a broader release than those required of other Class Members." *Id.* at 8−9. Deducting these amounts from the gross settlement amount leaves a net settlement amount of $1,658,333. *Id.* at 8.

This net settlement amount would be distributed to participating members of the settlement class, which Greer defines as: "All persons who worked at Defendant's California retail stores in non-exempt positions at any time during the period from: (1) March 18, 2011 to January 31, 2015 (the 'Security Check Class'); and (2) March 18, 2011 to April 13, 2017 (the 'Business Reimbursement Class')." *Id.* at 8. As a non-reversionary settlement, the entirety of this net settlement amount will be distributed to class members, with no portion reverting to DSG. *Id.* Under this agreement, and assuming the court will grant Greer's requests for attorneys' fees, costs and incentive payments in full, each settlement class member would receive, on average, $155. *Id.* at 9.

Greer's motion for settlement approval is unopposed. The court submitted the motion after oral argument, ECF No. 76 (hearing minutes), and resolves it here.

---

[1] All citations to the parties' briefs refer to CM/ECF page numbers, not the briefs' internal pagination.

2

II.     LEGAL STANDARD

There is a "strong judicial policy" favoring settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nonetheless, to protect absent class members' due process rights, Rule 23(e) of the Federal Rules of Civil Procedure permits the claims of a certified class to be "settled . . . only with the court's approval" and "only after a hearing and only on a finding [that the agreement is] fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e). To determine whether a proposed class action settlement is fair, reasonable and adequate, courts consider several factors, as relevant, including:

> (1) [T]he strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (noting, at preliminary approval stage, courts consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval . . . .") (citations omitted).

These factors substantively track those provided in 2018 amendments to Rule 23(e)(2), under which the court may approve a settlement only after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

3

>       (iii) the terms of any proposed award of attorney's fees,
>       including timing of payment; and
>
>       (iv) any agreement required to be identified under Rule
>       23(e)(3); and
>
>    (D) the proposal treats class members equitably relative to each
>    other.

Fed. R. Civ. P. 23(e)(2)(A)−(D). The Rule 23(e)(2) factors took effect on December 1, 2018 and, as an advisory note to the Rule 23(e) amendment recognizes, "each circuit has developed its own vocabulary for expressing [] concerns" regarding whether a proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, the newly codified factors are not intended "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*; *see also* 4 Newberg on Class Actions § 13:14 (5th ed.) (noting Rule 23(e) "essentially codified [federal courts'] prior practice"). Moreover, the Advisory Committee warned against allowing "[t]he sheer number of factors [to] distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, the court draws on the Ninth Circuit's longstanding guidance and the Rule 23(e)(2) factors as relevant to resolve this motion.

III.   DISCUSSION

This court has joined others that reject "the idea that district courts should conduct a more lax inquiry at the preliminary approval stage" of the two-step class action settlement approval process. *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035–36 (N.D. Cal. 2016). In light of the court's duty to absent class members, the court "review[s] class action settlements just as carefully at the initial stage as [it] do[es] at the final stage." *See id.* at 1037. This approach is consistent with Rule 23, which permits the court to provide notice of a proposed settlement to the class only upon "the parties' showing that the court will likely be able to: [¶] [] approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i).

/////

4

Turning to the relevant factors, the court finds at this preliminary stage that the proposed settlement is fair, reasonable and adequate, but notes certain areas of concern.

A. <u>Preliminary Approval</u>

1. <u>Whether the Proposed Relief is Adequate in Light of the Costs, Risks and Delay</u>

Under Rule 23, the court determines whether the proposed relief is adequate, considering in part "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i); *see also Churchill Vill., LLC*, 361 F.3d at 575 (courts should address strength of plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the extent of discovery completed and the stage of proceedings).

Class counsel attest to their "exhaustive investigation into the claims at issue." Mot. at 12; Perez Decl., ECF No. 73-1, ¶ 9. The parties pursued both formal and informal discovery, with class counsel reviewing "several hundred pages of documents, including Defendant's written policies regarding the claims at issue, and a sample of employee time records." Mot. at 11. Class counsel also took a total of seven depositions, including depositions of two DSG Rule 30(b)(6) witnesses, two DSG employee witnesses, Greer and two plaintiff experts. *Id.* at 11−12. Counsel's investigation efforts included determining whether Greer was suitable to serve as a class representative; evaluating potential class claims; researching similar, relevant class actions and settlements; analyzing DSG's policies and practices; conducting a discounted valuation analysis of the class claims; drafting the mediation brief and attending mediation; and finalizing the settlement agreement. *Id.* at 12. In light of these efforts, class counsel contends they are well situated "to appreciate the strengths and weaknesses of the claims alleged against Defendants and the benefits of the proposed Settlement." *Id.* They assess the value of their claims, and the weaknesses and uncertainties warranting compromise, as follows.

The security inspection class claims turn on plaintiff's allegations that DSG required management personnel to search employees' bags and clothing at the end of their shifts without compensating employees for their time. *Id.* at 18; *see* Class Cert. Order at 8−17. Relying on DSG's

records, plaintiff estimates security inspection class members worked approximately 880,220 shifts during the class period, with security checks lasting an average of 6 minutes each, resulting in DSG's maximum exposure of $1,427,717 (880,220 shifts x $16.22/hour x 0.1 hours). *Id.* at 18−19. As bases for compromise on the security inspection claims, plaintiff notes DSG's is likely to argue its security inspections were sporadic and inconsistent, citing evidence DSG's Modesto store allowed class members to decide whether they wanted to participate in an inspection rather than requiring them to do so. Mot. at 19. Plaintiff also notes that DSG's has argued, and may continue to argue through trial and appeal, that because employees voluntarily bring bags to work, a bag-check does not violate California law. *Id.*

The court also certified certain derivative claims "tied to claims for off-the-clock work." Class Cert. Order at 17−18; *see also Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. SACV 10-00517-JVS (RZx), 2012 WL 13014985, at *14−15 (C.D. Cal. Mar. 7, 2012) (certifying inaccurate wage statements and unfair business practices claims as derivative of meal period premiums and lost wages claims); *Shiferaw v. Sunrise Senior Living Mgmt., Inc.*, No. LA CV 13-02171-JAK (PLAx), 2016 WL 6571270, at *12 (C.D. Cal. Mar. 21, 2016) (noting derivative California Labor Code claims are commonly "presented together with the corresponding claims for violations of the Labor Code . . . ."); *Aldapa v. Fowler Packing Co., Inc.*, 323 F.R.D. 316, 355 (E.D. Cal. 2018) (acknowledging where claims are "strictly derivative" there is "no need to certify a separate subclass to address them").

In plaintiff's derivative claim under California Labor Code section 226(a), he alleges DSG did not provide class members with itemized wages accurately reflecting their gross and net wages throughout the one-year statutory limitations period of off-the-clock security inspections. Mot. at 20−21. In determining DSG's maximum liability, plaintiff opted for a "conservative[] estimate," anticipating DSG would argue $100 penalties for subsequent violations of Section 226(a) are unavailable because DSG did not receive formal notification of the initial violation. *See* Cal. Lab. Code § 226(e)(1) (entitling employee injured by employer's "knowing and intentional" violation of section 226(a) to either "actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each

violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) . . . ."); *see Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (quoting *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008) ("The word 'subsequent' has a specific meaning under the California Labor Code. 'Until the employer has been notified that it is violating a Labor Code provision . . . the employer cannot be presumed to be aware that its continuing underpayment of employees is a "violation" subject to penalties.'")). Accordingly, plaintiff estimated DSG's exposure as $1,380,850 using the $50, rather than $100, violation rate (27,617 pay periods x $50). Mot. at 21. Plaintiff argues this figure is further justified by DSG's anticipated argument that any inaccuracies in the wage statements were "technical" and cannot be deemed to have injured employees as required to obtain damages under Section 226(e). Mot. at 21−22; *see Laumea v. Performance Food Grp., Inc.*, No. EDCV 14-1364 JGB (DTBx), 2014 WL 12695803, at *5 (C.D. Cal. Sept. 4, 2014) (addressing split in authority regarding Section 226's injury requirement).

Plaintiff also asserts a claim, derivative of class members' off-the-clock work, for waiting time penalties under California Labor Code section 203; the claim contends employees were not timely paid wages upon termination. Mot. at 22; Cal. Labor Code § 203. Plaintiff estimates DSG has $12,244,072 in maximum exposure for these claims, assuming there are 4,575 former employees with claims during the three-year limitations period, each with an average 5.5-hour shift, at hourly wages of $16.22 for thirty (30) days of penalties. Mot. at 22. Because DSG could potentially establish its good faith, a complete defense to the waiting time penalty, plaintiff felt compromise was justified here. *Id.*; Cal. Labor Code § 203.

The business expense reimbursement class claims arise from plaintiff's allegations that DSG required class members to wear specific clothing styles to work in certain departments but did not reimburse class members for expenses incurred purchasing such clothing. *Id.* at 19−20; Class Cert. Order at 18−22; Cal. Lab. Code § 2802. From DSG's records, plaintiff estimates there are approximately 10,700 class members who spent an average of $200 each on work clothes, resulting in DSG's maximum liability of $2,140,000. Mot. at 20. Plaintiff argues compromise on these claims was necessary because DSG will argue most class members already owned the

7

necessary clothing, and DSG either did not enforce this policy or it did not have a policy at all but instead merely provided "guidance" to employees. *Id.*

Taking these claims together, plaintiff estimates DSG's maximum potential exposure as $17,192,639.50. Mot. at 23. The parties have agreed to settle this matter for $2,900,000, which constitutes approximately 17 percent of DSG's total potential liability. *Id.* Plaintiff has sufficiently explained several potential impediments to full recovery in this case, and the prospect of plaintiff's losing at trial or on appeal, with all attendant costs, indicates the recovery here is reasonable.

### 2. Arm's Length Settlement Negotiations

The court also considers whether the parties reached the settlement agreement through arm's length negotiations. Fed. R. Civ. P. 23(e)(2)(B); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 (considering whether "proposed settlement appears to be the product of serious, informed, non-collusive negotiations").

Here, the parties attended private mediation with an experienced wage and hour mediator, who "helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides." Mot. at 15. The parties did not settle at mediation but continued their negotiations with the mediator after formal mediation concluded. *Id.* at 12. The mediator eventually issued a mediator's proposal, which both parties accepted. *Id.*

The parties' participation in mediation "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). This factor weighs in favor of preliminary approval.

### 3. Adequate Representation

Whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal treats class members equitably relative to each other" also factor into the court's assessment of whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2)(A), (D). To that end, a proposed agreement should "not

/////

8

improperly grant preferential treatment to class representatives or segments of the class . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

As discussed above, class counsel undertook significant discovery in this case and successfully moved for class certification. At this juncture, there is nothing before the court indicating class counsel have not adequately represented the class.

As the sole representative plaintiff, Greer has served this class through several years of litigation. Even so, the court is unlikely to award him the $10,000 incentive award he requests based on what it currently can discern. This proposed award is significantly, if not prohibitively, larger than the average $155 award each class member is expected to receive and represents a significant portion of the overall $2,900,000 gross settlement amount. To justify this award, plaintiff cites "his service on behalf of Class Members and [his] agreeing to a broader release than those required of other class members," though he notes he will more fully support his proposed incentive award in a later motion. Mot. at 28.

"An excessive class representative service award may be an indication that the named class member is not adequately representing the interests of the class." *Flores v. ADT LLC*, No. 1:16-CV-00029-AWI-JLT, 2018 WL 6981043, at *1 (E.D. Cal. Mar. 19, 2018) (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013)). Indeed, a class representative may be more likely to support a settlement that shortchanges absent class members when he stands to gain a much more significant award. *Cf. Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 336 (N.D. Cal. 2014) (noting "[p]laintiffs only negotiated the requested award after agreeing to a settlement amount," which suggested award was reasonable). Class representatives often request incentive awards of $10,000 or an amount in that realm, and the court does not presume any impropriety on Greer's part here. Nonetheless, the court will grant an incentive award only upon "'evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs.'" *Flores*, 2018 WL 6981043, at *1 (quoting *Reyes v. CVS Pharmacy*, Inc., No. 1:14-CV-00964-MJS, 2016 WL 3549260, *15 (E.D. Cal. June 29, 2016)); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (court should consider

"proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment"). There is no such evidence currently before the court, though the court acknowledges plaintiff intends to provide this evidence in his formal motion for an incentive award.

Accordingly, while the court preliminarily approves an incentive award in an amount to be determined in principle and will consider plaintiff's formal motion for an incentive award of $10,000, it cannot provide assurance the full $10,000 award sought is likely to be awarded.

The court also notes the settlement agreement provides "[t]he number of Security Check Class Members will not exceed 5,800 (in order of date of hire), and the number of Business Reimbursement Class Members will not exceed 10,700 (in order of date of hire)." Agreement § 5. At hearing, DSG's counsel assured the court that these figures are based on DSG's records and estimated with 99 percent accuracy that no class member would be excluded because of this definition. If the parties or settlement administrator determines any class member may be excluded based on his or her hire date, the parties are ORDERED to notify the court immediately so as to allow the court to determine how the exclusion should affect the settlement moving forward.

### 4. Attorneys' Fees

The court also considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In diversity actions, state law governs both counsel's right to fees and the method for calculating fees. *Mangold v. Cal. Public Util. Commc'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees.").

"[B]oth state and federal courts consider similar tests to evaluate the reasonableness of the fees requested from a settlement fund." *Flores v. ADT LLC*, No. 1:16-CV-0029-AWI-JLT, 2018 WL 1062854, at *12 (E.D. Cal. Feb. 27, 2018), *report and recommendation adopted as*

*modified*, No. 1:16-CV-00029-AWI-JLT, 2018 WL 6981043 (E.D. Cal. Mar. 19, 2018). California courts have discretion to rely on either a percentage of the recovery or lodestar approach, with "the goal under either . . . approach being the award of a reasonable fee to compensate counsel for their efforts." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (2016)); *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002) ("To calculate the fee in a common-fund case, the district court 'has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award.'")).

Here, class counsel urge the court to apply a percentage of the settlement fund approach, awarding 33 percent of the gross settlement, or $966,667, as attorneys' fees. Mot. at 8−9, 26. As with the incentive award sought for Greer, this request is largely unsupported as counsel intend to file a formal motion following preliminary approval of the settlement. *See* Mot. at 27. The Ninth Circuit recognizes a 25 percent benchmark in common fund cases, allowing departures where properly supported and justified. *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) ("We have permitted awards of attorneys' fees ranging from 20 to 30 percent of settlement funds, with 25 percent as the benchmark award."). This is consistent with California state court practice, though California courts more often deem awards of up to 33 percent reasonable and less often expressly refer to a 25 percent benchmark. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009) (noting fees of up to one-third are frequently awarded and "[a] fee award of 25 percent is the benchmark award that should be given in common fund cases") (internal quotation and alteration marks omitted); *Espinosa v. California Coll. of San Diego, Inc.*, No. 17CV744-MMA (BLM), 2018 WL 1705955, at *8 (S.D. Cal. Apr. 9, 2018) (collecting California authority for awarding 30 percent of settlement).

On this record, the court cannot yet find the fees sought are reasonable. Counsel will need to properly support the request, and the court will require the information necessary to conduct a lodestar cross-check. *Laffitte*, 1 Cal. 5th at 506 ("[T]rial courts have discretion to conduct

/////

a lodestar cross-check on a percentage fee" or they may "use other means to evaluate the reasonableness of a requested percentage fee.").

### 5. Method of Allocating Relief to Class Members

In determining the adequacy of the relief provided to the class, the court also considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).

Under the proposed agreement, 75 percent of the net settlement amount will be allocated to the Security Check Class and 25 percent to the Business Reimbursement Class. Mot. at 24. Each class member will receive a pro-rata settlement payment based on the number of workweeks the member worked during the relevant class period. *Id.* at 23−24. DSG's will provide the settlement administrator with each class member's number of workweeks. *Id.* at 24. If class members dispute the number of workweeks identified in their notice, they may file a dispute, with supporting documents, to be resolved by the claims administrator. Agreement § 42. In resolving the dispute, the administrator will presume DSG's records are correct but evaluate the class member's evidence. *Id.* Necessary tax withholdings and deductions will be withheld from each member's settlement check, and the settlement administrator will forward these funds to the appropriate body. Mot. at 24. If any class member excludes him or herself from the class, the settlement administrator will proportionately increase the payment for all other participating class members. *Id.* If the court awards attorneys' fees less than the 33 percent sought, the unawarded amount reverts to the net settlement fund for proportional distribution to class members. Agreement § 31.

The court has not identified any deficiencies with this process, and this factor weighs in favor of approval.

### 6. Conclusion

While the court expresses doubt as to the amount of plaintiff's incentive award and class counsels' attorneys' fees, the proposed settlement overall appears to be fair, reasonable and adequate. The court GRANTS preliminary approval.

/////

B.  Notice

"The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement] . . . ." Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23's provision for notifying class members of class certification, the notice must state in plain, easily understood language:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i). Further, when, as here, "the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4).

As an initial matter, the court notes its March 15, 2018 order authorized distribution of a class notice, which included opt-out forms, following plaintiff's contested motion to distribute such notice. *See* ECF Nos. 55, 56, 63 (briefing on plaintiff's motion for approval of class notice and plan), 66, 70 (orders approving notice). At hearing on this motion, when asked how many opt-outs had been received in response to the class notice, counsel expressed confusion and indicated only a *Belaire-West* notice had been distributed and the class had not yet had an opportunity to opt-out. *See Goro v. Flowers Foods, Inc.*, No. 17-CV-02580-JLS-JLB, 2018 WL 3956018, at *9 (S.D. Cal. Aug. 17, 2018) (discussing nature and purpose of *Belaire-West* notices). Given the prior history of this case, the court does not understand counsels' position, but any misunderstanding may not necessarily affect resolution of the instant motion. *But see* Ann. Manual Complex Lit. §

21.312 (4th ed. 2004) ("Even if a class member has opted out after receiving a certification notice, the parties might direct notice to such opt outs to give them an opportunity to opt back into the class and participate in the proposed settlement."). The parties are ORDERED to meet and confer and file a joint statement within seven (7) days explaining the status of class notice distribution and how any prior notice affects this motion, if at all.

As to plaintiff's proposed notice, as the court discussed with the parties at hearing, the notice should be revised as follows. The class definitions provided in the notice should track the definitions provided in the prior notice. The notice must make clear that class members' written objections need only clearly state the basis for the objection and should not suggest "legal support" and "copies of any papers, briefs, or other documents" must accompany a clear objection. *See* Notice at 4. Further, the notice must be modified to make clear the court will allow any class member who wishes to express his or her objections at the final approval hearing to speak, rather than limiting the pool to those who file written objections. *See id.* at 5.

The court also notes plaintiff has not, as to the settlement notice, provided an opt-out form for class members to complete and return should they wish to opt out. "In a Rule 23(b)(3) class, the notice and any Internet Web site should include opt-out forms." Ann. Manual Complex Lit. § 21.312 (4th ed.). "[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). There is no firm requirement, however, that a class notice include an opt-out form. *See Makaeff v. Trump Univ., LLC*, No. 10-CV-0940-GPC-WVG, 2015 WL 5638192, at *5 (S.D. Cal. Sept. 21, 2015) (collecting authorities and finding, "on balance, such a separate form will 'engender confusion' and may encourage class members to 'unwittingly opt out of the class'") (quoting *Roberts v. Heim*, 130 F.R.D. 416, 423 (N.D. Cal. 1988)). Here, plaintiff's decision to forego an opt-out form at this stage is puzzling because the parties previously drafted and, the court assumes, distributed an opt-out form that would presumably take little effort to modify and include for settlement notice. *See* Ex. B, ECF No. 68; *see also* ECF No. 56 at 9 (DSG arguing class members
/////

should be permitted to opt out via email, text message, online and by mail). Accordingly, the court will require the parties to provide an opt-out form here.

The notice also should, but does not, "inform class members where they can examine or obtain a copy" of the settlement and other important documents filed in this case. *See* Ann. Manual Complex Lit. § 21.312 (4th ed.). Similarly, the notice should inform class members when counsel and plaintiff will file their respective motions for attorneys' fees and costs and an incentive award and where class members may review those documents. *See* ECF No. 75 at 3 (proposed notice schedule setting attorneys' fees and costs and incentive award motions to be heard with final fairness hearing).

Plaintiff is ORDERED to make all necessary corrections as specified above and submit an updated form in seven (7) days, along with an updated notice plan.

IV. CONCLUSION

The motion for preliminary approval is GRANTED. Upon receipt of the parties' joint statement and plaintiff's revised notice required above, the court will rule on the proposed class notice and notice schedule.

IT IS SO ORDERED.

DATED: August 26, 2019.

_____
UNITED STATES DISTRICT JUDGE