UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY GREER, | No.  2:15-CV-01063-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| DICK'S SPORTING GOODS, INC., | |
| Defendant. | |

On August 27, 2019, the court preliminarily approved settlement of this wage and hour class action.  Now, in separate motions, plaintiff moves for (1) final approval of the class action settlement and (2) an award of attorney fees and costs.  Mot. Approval, ECF No. 81; Mot. Fees, ECF No. 80.  As explained below, the court GRANTS both the motions.

I.      BACKGROUND

Plaintiff Jimmy Greer filed this class action on March 19, 2015, alleging defendant Dick's Sporting Goods, Inc. ("DSG") violated multiple provisions of the California Labor Code and California Business and Professions Code section 17200.  Compl., ECF No. 1-1; Not. of Removal, ECF No. 1; First Am. Compl., ECF No. 14 (filed Oct. 1, 2015).  On April 13, 2017, the court granted Greer's opposed motion for class certification, certifying the following two classes: (1) a "Security Check Class" arising from Greer's allegations that DSG employees were required

1

1    to wait, while off the clock, for inspection of their personal belongings before exiting the store, and

2    (2) a "Business Reimbursement Class," arising from Greer's claim that DSG employees were

3    required to purchase apparel but were not reimbursed for their purchases.  Class Cert. Order, ECF

4    No. 45.  On July 28, 2017, the Ninth Circuit denied DSG's petition for permission to appeal the

5    court's class certification order.  ECF No. 51.  This court then denied DSG's motion to stay the

6    case pending the California Supreme Court's resolution of two questions certified to that court by

7    the Ninth Circuit.  ECF No. 54 (motion to stay); Stay Order, ECF No. 64.[1]  On March 15, 2018,

8    after resolving the parties' disagreements and requiring several modifications, the court approved

9    the class notice form and issued a class notice plan.  Not. Order, ECF No. 70.  On March 26, 2019,

10   Greer moved for preliminary approval of his settlement with DSG.  Mot. Prelim. Approval.  ECF

11   No. 73.  On August 27, 2019, the court granted Greer's unopposed motion for preliminary approval.

12   Prelim. Approval Order; ECF No. 77.

13       A.    Preliminary Settlement Approval

14           As a functional matter, a review of a proposed class action settlement generally

15   involves two hearings: (1) an initial hearing to determine whether certification and preliminary

16   approval of the settlement is justified and, (2) after notice has been provided to the class, a final

17   fairness hearing to determine whether final approval is appropriate.  Manual for Complex Litig.,

18   Fourth § 21.632 (2004).  The court held the preliminary approval hearing on June 28, 2019, and,

19   as noted, issued the approval order thereafter.  *See generally* Prelim. Approval Order.  The court

20   preliminarily approved the following proposed settlement terms: (1) defendant will pay a gross

---

22   [1] The California Supreme Court has by now resolved the two questions certified by the Ninth
     Circuit.  *See Troester v. Starbucks Corp*., 5 Cal. 5th 829 (2018) (holding Fair Labor Standards

23   Act's *de minimis* doctrine does not apply to California unpaid wages claims); *Frlekin v. Apple*, 8
     Cal. 5th 1038 (2020) (holding time employees spent waiting for and undergoing exit searches was

24   "employer-controlled activity" and compensable as "hours worked").  The holding in *Troester*
     does not affect the result here, because as the court previously found, even if the *de minimis*

25   doctrine applied, there would be common questions regarding whether the class satisfied the
     doctrine's requirements.  Class Cert. Order at 12–13.  In addition, the holding in *Frlekin* does not

26   affect the result here, because the parties had previously agreed they would "conduct discovery on
     the amounts of times [class members] spent on security checks," Stay Order at 4 (citing Stay

27   Opp'n ECF No. 58, at 6; Stay Reply, ECF No. 61, at 10), and the proposed settlement takes

28   account of plaintiffs' security inspection claims.

settlement amount of $2,900,000; (2) from that total, $10,000 for plaintiff's class representative enhancement award; (3) $65,000 in settlement administration costs; (4) a proposed attorneys' fee award of 33 percent of the gross settlement ($966,667) and $200,000 in expenses. *Id.* at 2. The court also preliminarily approved distributing a net settlement of $1,658,333 to the settlement class, which includes "All persons who worked at Defendant's California retail stores in non-exempt positions at any time during the period from: (1) March 18, 2011 to January 31, 2015 (the 'Security Check Class'); and (2) March 18, 2011 to April 13, 2017 (the 'Business Reimbursement Class')." *Id.* at 2 (citing Prelim. Approval Mot. at 8). The settlement is a non-reversionary settlement, with each settlement class member receiving on average $155.00. *Id.* at 2.

      B.      <u>Reservations in the Preliminary Approval Order</u>

Although the court preliminarily approved the settlement, the court expressed concerns about the following terms. First, the court noted "it cannot provide assurance the full $10,000 award sought is likely to be awarded" because plaintiff had not provided enough evidence to explain why the incentive award should be significantly larger than the average class award and represent a significant portion of the overall gross settlement amount. *Id.* at 10. Second, the court observed plaintiff's request for 33 percent of the gross settlement toward attorneys' fees was largely unsupported; thus, the court said it would expect the final motion to provide full support for this request. *Id.* at 11. The court also ordered the parties to revise the notice to ensure the definitions tracked those in the prior notice, to clarify class members need only state the basis for their objection, and to allow class members to express objections in person at a final approval hearing. *Id.* at 14. Lastly, the court ordered plaintiff to provide an opt-out form for class members, inform class members where they can obtain a copy of the settlement and advise them when plaintiff and counsel file their motions for approval of attorneys' fees and costs and the proposed incentive award. *Id.* at 14–15. Plaintiff revised the class notice and on September 18, 2019, the court approved the revised notice and set the notice schedule. Class Notice Order, ECF No. 79.

Accounting for these concerns, the court proceeds to determine whether to grant final approval of the settlement.

1  II.      LEGAL STANDARD

2          There is a "strong judicial policy" favoring settlement of class actions.  *Class*

3  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nonetheless, to protect absent

4  class members' due process rights, Rule 23(e) of the Federal Rules of Civil Procedure permits the

5  claims of a certified class to be "settled . . . only with the court's approval" and "only after a

6  hearing and only on a finding [that the agreement is] fair, reasonable, and adequate . . . ."  Fed. R.

7  Civ. P. 23(e).  To determine whether a proposed class action settlement is fair, reasonable and

8  adequate, courts consider several factors as relevant, including: (1) [T]he strength of the

9  plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

10 risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

11 (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and

12 view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

13 members of the proposed settlement.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,

14 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

15 2004)); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (noting, at

16 preliminary approval stage, courts consider whether "the proposed settlement appears to be the

17 product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

18 improperly grant preferential treatment to class representatives or segments of the class, and falls

19 within the range of possible approval . . . .") (citations omitted).  These factors substantively track

20 those provided in 2018 amendments to Rule 23(e)(2), under which the court may approve a

21 settlement only after considering whether:

22          (A) the class representatives and class counsel have adequately represented the

23          class;

24          (B) the proposal was negotiated at arm's length;

25          (C) the relief provided for the class is adequate, taking into account:

26                  (i) the costs, risks, and delay of trial and appeal;

27                  (ii) the effectiveness of any proposed method of distributing relief to the

28                  class, including the method of processing class-member claims;

4

1           (iii) the terms of any proposed award of attorney's fees, including timing of

2           payment; and

3           (iv) any agreement required to be identified under Rule 23(e)(3); and

4       (D) the proposal treats class members equitably relative to each other.

5 Fed. R. Civ. P. 23(e)(2)(A)−(D).  The Rule 23(e)(2) factors took effect on December 1, 2018 and,

6 as an advisory note to the Rule 23(e) amendment recognizes, "each circuit has developed its own

7 vocabulary for expressing [] concerns" regarding whether a proposed settlement is fair,

8 reasonable and adequate.  Fed. R. Civ. P. 23(e) advisory committee's note.  Accordingly, the

9 newly codified factors are not intended "to displace any factor, but rather to focus the court and

10 the lawyers on the core concerns of procedure and substance that should guide the decision

11 whether to approve the proposal." *Id.*; *see also* 4 Newberg on Class Actions § 13:14 (5th ed.)

12 (2019) (noting Rule 23(e) amendments in 2018 "essentially codified [federal courts'] prior

13 practice").  Moreover, the Advisory Committee warned against allowing "[t]he sheer number of

14 factors [to] distract both the court and the parties from the central concerns that bear on review

15 under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e) advisory committee's note.  Here, the court draws on

16 the Ninth Circuit's longstanding guidance as still relevant and the Rule 23(e)(2) factors as

17 applicable to resolve this motion.

18 III.    DISCUSSION

19      A.    Final Approval

20       For the reasons articulated below, the court finds class counsel and class

21 representatives have adequately represented the class.  Whether "the class representatives and class

22 counsel have adequately represented the class" and whether "the proposal treats class members

23 equitably relative to each other" factor into the court's assessment of whether the proposed

24 settlement is fair, reasonable and adequate.  Fed. R. Civ. P. 23(e)(2)(A)−(D).

25       1.    Adequacy of Class Counsel's Representation of Class

26       As discussed in the court's previous order above, class counsel undertook significant

27 discovery in this case and successfully moved for class certification.  Prelim. Approval Order at 9.

28

1    Then and now, there is nothing before the court indicating class counsel has not adequately

2    represented the class.

3                    2.        Adequacy of Class Representatives' Representation of Class

4                    As part of the court's analysis of whether class representatives have adequately

5    represented the class, the court closely analyzes any potential enhancement payments to the class

6    representative.  To that end, a proposed agreement should "not improperly grant preferential

7    treatment to class representatives or segments of the class . . . ."  *In re Tableware Antitrust Litig.*,

8    484 F. Supp. 2d at 1080.  In determining whether to approve an enhancement payment, courts

9    may consider the following factors: (1) the risk to the class representative in commencing suit,

10   both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class

11   representative; (3) the amount of time and effort spent by the class representative; (4) the duration

12   of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative

13   as a result of the litigation.  *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal.

14   1995).  Various courts in this circuit, including this court, have adopted the *Van Vranken* factors.

15   *See Zakskorn v. Am. Honda Motor Co., Inc*., 2:11-CV-02610-KJM, 2015 WL 3622990, at *17

16   (E.D. Cal. June 9, 2015).

17                   a)        Risk of Commencing Suit

18                   On the first factor, plaintiff argues the $10,000 enhancement payment is justified

19   because he undertook reputational risk by litigating claims against a former employer, which could

20   impact his ability to find employment in the future if a potential employer conducts a screening to

21   determine whether he has filed suit.  Mot. Fees at 30–31.  This factor favors providing plaintiff with

22   an enhancement payment.

23                   b)        Notoriety or Personal Difficulties

24                   With respect to the second factor, neither the record nor plaintiff himself indicate

25   the case led to plaintiff's notoriety or personal difficulties.  Accordingly, this factor does not favor

26   the court granting plaintiff an enhancement payment.

27   /////

28   /////

6

1                                  c)        Time and Effort Spent

2                To determine the third factor, the amount of time and effort spent by the class

3    representative, the court will examine "'evidence demonstrating the quality of plaintiff's

4    representative service,' such as 'substantial efforts taken as class representative to justify the

5    discrepancy between [his] award and those of the unnamed plaintiffs.'" *Flores*, 2018 WL 6981043,

6    at *1 (quoting *Reyes v. CVS Pharmacy*, Inc., No. 1:14-CV-00964-MJS, 2016 WL 3549260, *15

7    (E.D. Cal. June 29, 2016)).   Courts in this circuit have concluded a plaintiff is allowed an

8    enhancement payment due to "substantial efforts taken as class representative" when the plaintiff

9    has undertaken at least 30 to 40 hours of work.   *Emmons v. Quest Diagnostics Clinical*

10   *Laboratories, Inc.*, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017) (awarding enhancement

11   payment of $8,000 to each plaintiff when each conducted 30 to 40 hours of work); *Rodriguez v.*

12   *Kraft Foods Group, Inc.*, 2016 WL 5844378, at *16 (E.D. Cal. Oct. 5, 2016) (awarding

13   enhancement payment of $10,000 to plaintiff who conducted 40 hours of work on case).

14               Courts will also consider the "proportion of the [representative] payment[s] relative

15   to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*,

16   779 F.3d 934, 947 (9th Cir. 2015) (awarding $5,000 enhancement payment, which was 417 times

17   greater than average award but only .17 percent of gross settlement); *see also Patel v. TransUnion,*

18   *LLC*, 2018 WL 1258194, *3, 7–8 (N.D. Cal. Mar. 11, 2018) (awarding enhancement payment of

19   $10,000, 25 times the average award and 0.125 percent of gross settlement); *Emmons*,

20   2017 WL 749018 at *8 (E.D. Cal. Feb. 27, 2017) (awarding enhancement payment of $8,000, 14.5

21   times  average award and 0.3 percent of gross settlement); *Rodriguez*, 2016 WL 5844378 at *16

22   (awarding enhancement payment of $10,000, approximately 11 times average award and less than

23   0.5 percent of gross settlement); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D.

24   Cal. 2016) (awarding enhancement payment of $10,000, approximately 100 times average award

25   and less than 0.25 percent of gross settlement).

26               The court noted its doubts about awarding plaintiff the $10,000 requested incentive

27   award in its preliminary approval of the parties' settlement agreement.  Prelim. Approval Order at

28   9.  The award is significantly larger than the average $155 award each class member is expected to

                                                     7

receive, nearly 65 times higher, but it represents only 0.003 percent of the overall $2,900,000 gross settlement amount.  The court evaluates plaintiff's request for a $10,000 enhancement payment based on the new information from plaintiff and on the enumerated *Van Vranken* factors; ultimately, the court finds these factors show the enhancement payment is reasonable.

Plaintiff argues the enhancement payment is commensurate with his overall efforts on behalf of the class.  Plaintiff estimates, under oath, he spent between 75 and 85 hours in the prosecution of this lawsuit.  Jimmy Greer Decl. ¶ 10, ECF No. 80-2.  In the beginning stages of this case, plaintiff conducted multiple conferences with his attorneys regarding the factual bases for his claims, during which plaintiff learned more about this kind of litigation and his role as the representative plaintiff.  *Id.* ¶ 3.  Then, plaintiff states he reviewed the draft of the complaint for accuracy and contacted his attorneys regularly to discuss the progress of the case.  *Id.* ¶ 4.  During the discovery phase, plaintiff prepared answers to defendant's discovery requests, providing counsel copies of relevant documents and reviewing attorney questions stemming from defendant's discovery requests.  *Id.* ¶ 5.  Plaintiff also participated in a day-long deposition on February 3, 2016 and reviewed the transcript for accuracy afterwards.  *Id.* ¶ 6.  While his attorneys prepared the motion for class certification, plaintiff produced a declaration in support of the motion and spoke with fellow employees of defendant.  *Id.* ¶ 7.  Prior to and during mediation, plaintiff assisted his attorneys by providing information related to unreimbursed uniform expenses and assisted with the mediation brief; plaintiff also consulted his attorney throughout the mediation.  *Id.* ¶ 8.  Plaintiff reviewed the terms of the settlement, evaluating it to determine whether the outcome was fair, reasonable, and adequately compensates the class.  *Id.* ¶ 9.  Finally, plaintiff argues the general release, which requires him to waive all claims arising out of his employment, is broader than the release of other class members and accounts for the greater value of his enhancement payment.  *Id.* ¶ 11.  These documented extensive efforts and plaintiff's broad waiver of claims support a significant enhancement payment.

d)      Duration of Litigation

As for the fourth factor, litigation duration, this case was protracted.  Plaintiff first filed the case on March 19, 2015 in Sacramento County Superior Court and defendants removed

1   the case to this court May 15, 2015.  *See* Not. of Removal.  Nearly four years of motion practice

2   before this court and mediation followed, including cross-motions for class certification, cross-

3   motions to strike, a motion to stay, and a motion for approval of class notice.  *See* ECF Nos. 23,

4   24, 29, 35, 54, 55. The parties did not move for preliminary approval of the class action

5   settlement until March 26, 2019.  *See* Prelim. Approval Order.  For this reason, the fourth factor

6   favors the court granting an enhancement payment to plaintiff.

7                    e)      Personal Benefit

8                    On the fifth factor, personal benefit to the class representative, plaintiff argues the

9   enhancement payment is appropriate because he "will not gain any benefit that he [or she] would

10  receive as an ordinary class member."  Mot. Fees at 31 (quoting *In re Toys "R" Us FACTA Litig.*,

11  295 F.R.D. 438, 472 (C.D. Cal. 2014) (alteration in original)).  As noted, plaintiff also agrees to

12  release all claims against defendant, a considerably broader release than that of other class

13  members.  Mot. Fees at 31.  Therefore, the fifth factor favors granting an enhancement payment.

14                   f)      Conclusion

15                   Overall, the *Van Wranken* factors support granting the requested enhancement

16  payment here.  Plaintiff has adequately addressed the court's concerns outlined in the preliminary

17  approval order by providing sufficient information on his own efforts, as well as relevant authority

18  supporting approval of the enhancement payment.  The payment is in line with decisions in this

19  district where similar circumstances existed.  *See Emmons*, 2017 WL 749018 at *8; *Rodriguez*,

20  2016 WL 5844378, at *16.  Additionally, the enhancement payment represents a small percentage

21  of the gross settlement amount, 0.03 percent.  This small percentage, along with all of plaintiff's

22  efforts, offsets the fact the enhancement payment is 64 times the average settlement in this case.

23  As a result, the court finds it is reasonable to award plaintiff the enhancement payment of $10,000.

24           3.      Settlement Negotiations Conducted at Arm's Length

25                   After analyzing both the briefing and arguments made at the final approval hearing,

26  the court finds the settlement negotiations were conducted at arm's length.  "The court may approve

27  [settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate after

28  considering whether [. . .] the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B);

1   *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 (considering whether "proposed

2   settlement appears to be the product of serious, informed, non-collusive negotiations").

3        As noted in the court's order granting preliminary approval, the parties'

4   participation in mediation "tends to support the conclusion that the settlement process was not

5   collusive." *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL

6   5878390, at *6 (N.D. Cal. Nov. 21, 2012).  Mr. Mark Rudy, an experienced wage and hour

7   mediator, mediated this action and although mediation did not result in settlement, Mr. Rudy

8   helped the parties analyze the issues and risks here.  Mot. Approval at 22.  Experienced counsel

9   represented the parties throughout the negotiations, which further demonstrates the negotiations

10  were arms'-length and fair.  *Id* (citing Perez Decl. ¶¶ 12–14, Ex. 1).  During the final fairness

11  hearing, the parties emphasized Mr. Rudy's active involvement throughout this action, even at the

12  conclusion of the mediation, and noted that his proposal drove the final settlement terms.  *See*

13  Hr'g Minutes, ECF No. 82.  Moreover, the negotiations were lengthy as a result of defendants'

14  efforts to seek approval from senior officials in their corporation.  *Id.*  This factor weighs in favor

15  of final approval.

16              4.       The Proposed Relief Is Adequate

17        For the reasons set forth below, the court finds the proposed relief here is

18  adequate.  Under Rule 23, the court determines whether the proposed relief is adequate,

19  considering in part "the costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C)(i);

20  *see also Churchill Vill., LLC*, 361 F.3d at 575 (courts should address strength of plaintiff's case;

21  risk, expense, complexity, and likely duration of further litigation; risk of maintaining class action

22  status throughout trial; extent of discovery completed and stage of proceedings).

23        Plaintiff estimates defendant's maximum potential exposure was approximately

24  $17.2 million, comprising a maximum potential amount for the security inspection claim of

25  $1,427,717.00, a maximum potential amount for the business expense claim of $2,140,000.00, a

26  maximum potential amount for the wage-statement claim of $1,380,850.00, and a waiting-time

27  penalty claim of $12,244,072.50.  Mot. Approval at 21.  Plaintiff analyzed the potential of factors

28  affecting his case to discount these amounts, including, but not limited to the following: the

1    strength of defendant's defenses, the risk of losing dispositive motions, the risk of losing at trial.

2    *Id.* at 17.  Upon conducting this analysis, plaintiff concludes that a settlement amount of $2.8

3    million, which represents 17 percent of defendant's maximum potential exposure, is a fair and

4    reasonable settlement.  *Id.* at 21.

5             In the court's preliminary approval order, the court considered whether the

6    proposed relief was adequate by considering "the costs, risks, and delay of trial and appeal."

7    Prelim. Approval Order at 5–8.  The court did not at that point express concerns about the

8    proposed settlement and found the recovery appeared reasonable.  *Id.* at 8.  The final settlement

9    numbers and terms remain the same as they were when the court preliminarily approved the class

10   action settlement and there is no basis to doubt the reasonableness of the settlement at the time.

11            Courts also account for the effectiveness of any proposed method of distributing

12   relief to the class, including the method of processing class-member claims, when deciding

13   whether the proposed relief is adequate.  Fed. R. Civ. P. 23(e)(2)(C)(ii).   In its preliminary

14   approval order, the court outlined the proposed agreement's method of allocating relief to the

15   class.  Prelim. Approval Order at 12.  The court also approved issuing $65,000 in settlement

16   administration costs to the settlement administrator as part of the settlement.  *Id.* at 2.  With its

17   motion here, plaintiff includes a declaration from the case manager with the court appointed

18   settlement administrator, ILYM Group, Inc.  *See* Nathalie Hernandez Decl., ECF No. 81-2.  Ms.

19   Hernandez outlines the notice process and includes an official invoice for ILYM Group, Inc.'s

20   settlement administration costs of $65,000.  *Id.*, Ex. B.  The court can identify no deficiencies in

21   the administrator's bill.

22            Finally, class members' collective response to the settlement further demonstrates

23   the proposed relief is adequate.  No class members objected to the settlement and only 15 people,

24   representing a mere 0.15 percent of the settlement class, opted out of the class.  Mot. for Approval

25   at 13, 23; Hernandez Decl. ¶¶ 6–7.  This is a "strong indicator that a settlement is fair and

26   reasonable," and thus adequate.  Mot. for Approval at 23 (citing *Churchill Village, LLC v.*

27   /////

28   /////

11

1  |  *General Electric*, 361 F.3d 566 (9th Cir. 2004) ("affirming settlement approval where 45 of

2  |  approximately 90,000 notified class members objected and 500 opted out.")).

3  |          Overall, this factor weighs in favor of approval.

4  |          5.      The Settlement Treats Class Members Equitably

5  |          The settlement treats class members fairly.  The settlement class includes all

6  |  people who worked at DSG during the period from: (1) March 18, 2011 to January 31, 2015

7  |  ("Security Check Class"); and (2) March 18, 2011 to April 13, 2017 ("Business Reimbursement

8  |  Class").  Settlement Agreement ¶ 5, ECF No. 73-1.  The members' respective shares of each

9  |  class fund will be allocated on a pro-rata basis according to the number of weeks each class

10  |  member worked.  Calculating respective shares in this manner is fair and treats class members

11  |  equitably.  The class members' collective responses, which as reviewed above included no

12  |  objections and minimal opting out of the settlement, suggests the settlement treats all class

13  |  members equitably.  Mot. for Approval at 13, 23; Hernandez Decl. ¶¶ 6–7.

14  |          As noted above, the class representative will receive a different, higher amount

15  |  from the other class members.  The court has analyzed this payment separately and finds the

16  |  enhancement payment does not preclude final approval of the settlement.

17  |          6.      Conclusion

18  |          For the foregoing reasons, the court finds the settlement is "fair, reasonable, and

19  |  adequate" and grants final approval.

20  |      B.      Attorneys' Fees, Costs and Expenses

21  |          "The district court has discretion in common-fund cases to award attorneys' fees in

22  |  the amount of a percentage of the common-fund or using the lodestar method."  *Kakani v. Oracle*

23  |  *Corp.*, No. C 06-06493 WHA, 2007 WL 4570190, at *2 (N.D. Cal. Dec. 21, 2007).  Rule 23

24  |  permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the

25  |  parties' agreement."  Fed. R. Civ. P. 23(h).  Even when the parties have agreed on an amount, the

26  |  court must award only reasonable attorney's fees.  *Bluetooth*, 654 F.3d at 941.  In diversity

27  |  actions, the Ninth Circuit "has applied state law in determining not only the right to fees, but also

28  |  in the method of calculating fees."  *Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478

1   (1995); *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012); *Schiller*, 2012 WL 2117001,

2   at *15 ("In diversity actions such as this, the Ninth Circuit applies state law to determine the right

3   to fees and the method for calculating fees.").

4           The California Supreme Court has held: "when a number of persons are entitled in

5   common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all

6   results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded

7   attorney's fees out of the fund." *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977).  California courts

8   employ both the percentage-based method and the lodestar method for calculating attorney's fees

9   in common fund actions.  *See Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000).  A

10  California appellate court recently stated the goal "is the award of a 'reasonable' fee to

11  compensate counsel for their efforts, irrespective of the method of calculation.  It is not an abuse

12  of discretion to choose one method over another as long as the method chosen is applied

13  consistently using percentage figures that accurately reflect the marketplace." *In re Consumer*

14  *Privacy Cases*, 175 Cal. App. 4th 545, 557–58 (2009) (internal quotation marks and citations

15  omitted).

16                    1.    Ninth Circuit Benchmark

17          Based on an analysis framed by the Ninth Circuit benchmark, the court finds the

18  attorneys' fees requested here are reasonable.  The Ninth Circuit has generally set a 25 percent

19  benchmark for the award of attorneys' fees, and "courts may adjust this figure upwards or

20  downwards if the record shows special circumstances justifying a departure." *Ontiveros*, 303

21  F.R.D. at 372 (internal quotation marks omitted) (citing *In re Bluetooth Headset Prods. Liab.*

22  *Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)); *see also In re Nat'l Collegiate Athletic Ass'n Athletic*

23  *Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) ("We have permitted

24  awards of attorneys' fees ranging from 20 to 30 percent of settlement funds, with 25 percent as

25  the benchmark award.").  Federal courts apply state law in determining attorneys' fees.  *Mangold*,

26  67 F.3d at 1478.  California state courts more often deem awards of up to 33 percent reasonable

27  and less often expressly refer to a 25 percent benchmark.  *See In re Consumer Privacy* Cases, 175

28  Cal. App. 4th  545, 557 n.13 (2009) (noting fees of up to one-third are frequently awarded and

1   "[a] fee award of 25 percent is the benchmark award that should be given in common fund

2   cases") (internal quotation and alteration marks omitted); *Seguin*, 2018 WL 1919823, at *6 (citing

3   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)).

4           Plaintiff requests attorneys' fees in the amount $966,667, which as noted

5   represents approximately 33 percent of the non-reversionary settlement fund.  Mot. Fees at 9.

6   The court expressed concerns in the preliminary approval of the class action settlement, observing

7   the request for attorneys' fees was "largely unsupported" and calling on plaintiff's counsel to

8   "properly support the request" by providing the court with the information necessary to grant fees

9   of this percentage.  Prelim. Approval Order at 11.

10          In response, plaintiff provides the declaration of counsel Raul Perez.  *See* Raul

11  Perez Decl., ECF No. 80-1.  The court reviews the contents of this declaration in the section

12  below, where it conducts a lodestar cross-check of the proposed attorneys' fees amount.  Plaintiff

13  also provides California authority in support of its position a 33 percent award is fair and

14  reasonable.  *See*, *e.g.*, *Laffitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860, 871 (2014) ("33 1/3

15  percent of the common fund is consistent with, and in the range of, awards in other class action

16  lawsuits"); *Chavez v. Netflix, Inc.*, 162 Cal. App 4th 43, 66 n.11 (2008) ("Empirical studies show

17  that, regardless whether the percentage method or the lodestar method is used, fee awards in class

18  actions average around one-third of the recovery.").  In addition, plaintiff argues attorneys' fees

19  of 33 percent is reasonable given the persuasive decisions of other judges in this district.  *See,*

20  *e.g.*, *Emmons,* 2017 WL 749018, at *7 (awarding attorneys' fees of approximately 33 percent in

21  wage and hour case); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal.

22  2010) ("[E]xact percentage [awarded] varies depending on the facts of the case, and in most

23  common fund cases, the award exceeds that benchmark.").  The request here is in line with other

24  awards made within this circuit and within California, supporting its reasonableness.

25          2.      Lodestar Cross-Check

26          Comparison with the lodestar method also supports approving the award of

27  attorneys' fees.  Courts are encouraged to use the lodestar method as a cross-check to evaluate the

28  reasonableness of the percentage award.  *See Bluetooth*, 654 F.3d at 944–45; *Espinosa v.*

*California Coll. of San Diego, Inc.*, No. 17CV744-MMA (BLM), 2018 WL 1705955, at *8 (S.D. Cal. Apr. 9, 2018) (noting Ninth Circuit has also approved use of lodestar cross-checks to determine reasonableness of particular percentage recovery of common fund).  In calculating the attorneys' fees award under this method, a court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Bluetooth*, 654 F.3d at 942 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).  "Foremost among these considerations, however, is the benefit obtained for the class."  *Id.* at 942 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983)); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)).

a)   <u>Lodestar Amount</u>

The declaration of lead attorney, Raul Perez, provides the following breakdown of the time Capstone Law APC attorneys spent on this case and their regular rates per hour.  Perez Decl. ¶ 14.  Mr. Perez uses those numbers to calculate the total fees per attorney, the lodestar amount and the total hours spent, which were 1332.3.

| Attorney | Title | CA Bar | Rate | Hours | Fees |
|---|---|---|---|---|---|
| Raul Perez | Partner | 1994 | $725 | 63.1 | $45,747.50 |
| Melissa Grant | Partner | 1999 | $695 | 90.4 | $62,828.00 |
| Robert Drexler | Senior Counsel | 1985 | $695 | 309.7 | $215,241.50 |
| Stephen H. Gamber | Fmr. Senior Counsel | 1994 | $695 | 23.6 | $16,402.00 |
| Stan Karas | Fmr. Senior Counsel | 2002 | $595 | 305.6 | $181,832.00 |
| Bevin Allen Pike | Senior Counsel | 2002 | $595 | 119.8 | $71,281.00 |
| Matthew Bainer | Fmr. Senior Counsel | 2002 | $595 | 49.2 | $29,274.00 |
| Jamie Greene | Senior Counsel | 2007 | $495 | 47.1 | $23,314.50 |
| Eduardo Santos | Senior Counsel | 2007 | $495 | 29.7 | $14,701.50 |
| Jonathan Lee | Associate | 2009 | $435 | 214.9 | $93,481.50 |
| Anthony Castillo | Associate | 2009 | $435 | 33.1 | $14,398.50 |
| Ishan Dave | Fmr. Associate | 2015 | $295 | 46.1 | $13,599.50 |
| **Total** | | | | **1332.3** | **$782,101.50** |

Perez Decl. ¶ 14.

1    Plaintiff's counsel also provides itemized records in support of their hours worked.

2    Perez Decl. ¶ 14; *see Hensley*, 461 U.S. at 437 ("The applicant should exercise 'billing judgment'

3    with respect to hours worked […] and should maintain billing time records in a manner that will

4    enable a reviewing court to identify distinct claims") (citations omitted).  The Perez declaration

5    identifies the following major tasks: pleadings, miscellaneous filings, case management; legal and

6    factual analysis of claims and defenses; written discovery and depositions; motion practice; class

7    certification; appellate practice; communications with client and class members; mediation and

8    settlement negotiations; and trial preparation.  Perez Decl. ¶ 14.  Plaintiff's counsel specifies how

9    many hours each attorney worked on each of these major tasks, using that number to calculate the

10   total hours and total fees for each task.  *Id.*; *see also Bellinghausen v. Tractor Supply Co.*, 306

11   F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check

12   calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on

13   summaries submitted by the attorneys and need not review actual billing records.'") (citation

14   omitted).

15   Here, the case involved a number of motions, after removal from Sacramento

16   County Superior Court, ECF No. 1, including a motion to certify the class, ECF No. 23, a

17   subsequent motion to deny class certification by defendant, ECF No. 24, a petition to the Ninth

18   Circuit for permission to appeal the order granting class certification, Case No. 17-80075 Dkt.

19   No. 7, defendant's motion to stay the action pending a California Supreme Court decision, ECF

20   Nos. 57, 58, mediation, a motion for approval of proposed class notice, ECF Nos. 55, 56, 66, a

21   motion for preliminary approval of the class action settlement, ECF No. 73, and the instant

22   motions for attorneys' fees and final approval of the class action settlement, ECF Nos. 80, 81.

23   Due to the extent and significance of the motions in this heavily litigated case, the court finds

24   1332.30 hours is a reasonable number of hours to use for the lodestar cross-check.

25   The court next turns to the hourly rates plaintiff's counsel provides as part of its

26   lodestar cross-check.  In Mr. Perez's declaration, he outlines the qualifications and experience of

27   Capstone Law APC to support its attorneys' hourly rates.  Perez Decl. ¶¶ 11–13.  The declaration

28   provides a number of examples of federal and state courts approving Capstone's rates, but

1    plaintiff has not provided and the court has not located any instances in which this court or a

2    sister court in the Eastern District has approved the rates proposed here.  *Id.* ¶ 15.  The rates

3    proposed by plaintiff, namely $695 to $725 for partners and $595 to $695 for senior counsel, are

4    high for this district.  Courts in the Eastern District of California have "previously accepted as

5    reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545

6    and $695 for senior counsel and partners."  *Milburn v. PetSmart, Inc.*, No. 1:18-CV-00535-DAD-

7    SKO, 2019 WL 5566313, at *8 (E.D. Cal. Oct. 29, 2019) (citing, *inter alia*, *Gong-Chun v. Aetna*

8    *Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding

9    between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior

10   counsel and partners)); *Turk v. Gale/Triangle, Inc. et al.*, No. 2:16-cv-00783-MCE-DB, ECF No.

11   33 (E.D. Cal. Sept. 21, 2017) (approving hourly rates in the $400/hour range, with rates of up to

12   $675 for partners) (citations omitted); *Garcia v. Gordon Trucking, Inc*., No. 1:10-CV-0324-AWI-

13   SKO, 2012 WL 5364575, at *9 (E.D. Cal. Oct. 31, 2012) (approving rates of $650 per hour,

14   based on attorneys' skill, risks and percentage award); *see also Z.F. v. Ripon Unified Sch. Dist.*,

15   No. 2:10-cv-00523-TLN-CKD, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017) ("Prevailing

16   hourly rates in the Eastern District of California are in the $350–$550/hour range for experienced

17   attorneys with over 15 years of experience in civil rights and class action litigation.").

18           Associates Jonathan Lee and Anthony Castillo, each with rates of $435 per hour,

19   have practiced law for approximately eleven years, and former associate Ishan Dave, whose rates

20   were $295 per hour, has practiced law for approximately five years.  Perez Decl. ¶ 14.  As noted

21   above, courts in the Eastern District have previously accepted hourly rates for associates between

22   $370 and $495 for lodestar purposes, though lower rates are more commonly approved.  *Milburn*,

23   2019 WL 5566313, at *8 (E.D. Cal. Oct. 29, 2019) (noting courts previously accepted hourly

24   rates of between $370 and $495 but some courts in district approved only lower rates); *In re Taco*

25   *Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (courts in Eastern

26   District have found $350 to $400 per hour for attorneys with twenty or more years of experience,

27   $250 to $350 per hour for attorneys with less than fifteen years' experience, and $125 to $200 per

28   hour for attorneys with less than two years' experience reasonable); *Reyes v. CVS Pharm., Inc.*,

1   No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding

2   between $250 and $380 for attorneys with more than twenty years of experience, and between

3   $175 and $300 for attorneys with less than ten years' experience).  Based on the prevailing rates,

4   the court finds $435 is a reasonable hourly rate for Jonathan Lee and Anthony Castillo and $295

5   is a reasonable hourly rate for Ishan Dave.  The court will not change the rate applied to the work

6   of Melissa Grant, Robert Drexler, Stephen H. Gamber, Stan Karas, Bevin Allen Pike, Matthew

7   Bainer, Jamie Greene, and Eduardo Santos.  Perez Decl. ¶ 14.  Each of these attorneys were either

8   partner or senior counsel during this case, with rates between $495 and $695 per hour.  *Id.*

9        Mr. Perez has approximately 25 years of experience as an attorney and his hourly

10  rate is $725.  Perez Decl. ¶ 14.  Another court in this district declined to approve the rate of $700

11  an hour for an attorney with more than 30 years' experience in class action cases and instead held

12  $695 per hour to be "reasonable." *Milburn*, 2019 WL 5566313, at *9.  Recently, this court

13  applied the reasoning of *Milburn* and also declined to use an hourly rate of $700 for an attorney

14  with 30 years of experience, given the fee landscape in this district. *See Smothers v. NorthStar*

15  *Alarm Services LLC*, No. 2:17-cv-00548-KJM-KJN, 2020 WL 1532058, at *9 (E.D. Cal. Mar. 31,

16  2020) (applying $695 per hour to lodestar calculation for attorney with 30 years' experience).

17  The court will continue to follow this reasoning here.  This reduces Mr. Perez's total fees for the

18  lodestar calculation to **$43,854.50.**

19       After calculating the total fees of each attorney, including the reduction in Mr.

20  Perez's fees, the total lodestar amount is **$780,208.50**, down from **$782,101.50** plaintiff initially

21  requested.

22       To reach plaintiff's counsel's total requested fee of $966,667 requires applying a

23  multiplier of approximately **1.24** to the adjusted lodestar amount of $780,208.50.  The Ninth

24  Circuit has accepted multipliers within this range. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050–51, 1051

25  n.6 (reviewing approved fees from 24 cases and finding 20 of 24 fell within the 1.0–4.0 range,

26  and 13 of 24 fell within the 1.5–3.0 range).  This court evaluates the factors discussed in

27  *Bluetooth* to determine whether a 1.23 lodestar multiplier is justified here. *See In re Bluetooth*,

28  654 F.3d at 946 (citing relevant factors as "the quality of representation, the benefit obtained for

1    the class, the complexity and novelty of the issues presented, and the risk of nonpayment")

2    (quoting *Hanlon*, 150 F.3d at 1029).

3                            b)       Bluetooth Factors

4                First, plaintiff's counsel represented the class through a multi-stage litigation and

5    negotiation process, which included both mediation and multiple motions before this court.  This

6    factor demonstrates a modest positive multiplier to the lodestar amount is acceptable.  *See In re*

7    *Bluetooth*, 654 F.3d at 942.

8                Second, plaintiff's counsel negotiated a settlement considerable in size by

9    comparison to other wage and hour cases.  *See id.* ("Foremost among these considerations,

10   however, is the benefit obtained for the class.").  The settlement is approximately 17 percent of

11   defendant's maximum total exposure, which is greater than other settlements in cases such as

12   these.  *See Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. Jul.

13   24, 2014) (awarding settlement of eight percent of defendant's maximum recovery); *In re*

14   *Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (awarding settlement

15   between six percent and eight percent of defendant's maximum recovery).  Plaintiff also

16   highlights the average settlement is approximately $155, with the highest payment approximately

17   $1,235.  Mot. Approval at 23 (citing Hernandez Decl. ¶ 8).  This average settlement is higher than

18   many wage and hour class action settlements in California.  Mot. Approval at 23–24 (citing

19   *Badami v. Grassroots Campaigns, Inc.*, No. 3:07-cv-03465- JSW (N.D. Cal. Sept. 15, 2008)

20   (average settlement approximately $195); *Sandoval v. Nissho of Cal., Inc.*, No. 37-2009-

21   00091861-CU-OE-CTL (San Diego County Super. Ct. 2009) (average settlement of

22   approximately $145); *Fukuchi v. Pizza Hut*, No. BC302589 (L.A. County Super. Ct. 2006)

23   (average settlement of approximately $120); *Contreras v. United Food Group, LLC*, No.

24   BC389253 (L.A. County Super. Ct. 2008) (average settlement approximately $120); *Ressler v.*

25   *Federated Department Stores, Inc.*, No. BC335018 (L.A. County Super. Ct. 2008) (average

26   settlement approximately $90).  Additionally, plaintiff emphasizes that not a single class member

27   has objected to the settlement and less than 0.15 percent of the settlement class opted out, which

28

1    as noted above indicates the settlement is "fair and reasonable."  *See id.*  This factor supports

2    adding a positive multiplier to the lodestar amount.

3            Third, neither plaintiff's motion nor the record suggests plaintiff's claims were

4    novel or complicated for counsel.  This third factor does not support a positive multiplier to the

5    lodestar amount.

6            Fourth, plaintiff's counsel represented the class on a contingency basis.

7    Plaintiff's counsel had no guarantee they would receive any payment for the hours litigating this

8    case and for the costs they incurred as a result.  Mot. Fees at 22.  Plaintiff's counsel points out

9    other courts have rewarded counsel who accept cases on a pure contingency basis, as has this

10   court.  *Id.* at 22–23 (citing *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291,

11   1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys

12   for taking the risk of non-payment by paying them a premium over their normal hourly rates for

13   winning contingency cases.") (citations omitted); *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001)

14   (instructing courts to upwardly adjust fee compensation to ensure fees account for contingency

15   risk).

16           With one exception, all the *Bluetooth* factors support the application of a positive

17   multiplier to the lodestar amount.  In addition, a multiplier of 1.24 is within the acceptable range

18   in the Ninth Circuit.  With that multiplier applied here, the court finds the attorneys' fees

19   requested are reasonable.

20                   3.      Request for Costs

21           The court also must determine an appropriate award of costs and expenses.

22   Fed. R. Civ. P. 23(h).  "[I]n evaluating the reasonableness of costs, the judge has to step in and

23   play surrogate client."  *Ross v. Bar None Enters., Inc.*, No. 2:13-cv-00234, 2015 WL 1046117, at

24   *11 (E.D. Cal. Mar. 10, 2015) (internal quotation marks, citation omitted).  "In keeping with this

25   role, the court must examine prevailing rates and practices in the legal marketplace to assess the

26   reasonableness of the costs sought."  *Id.* (internal quotation marks and citation omitted).

27           In this case, plaintiff's counsel represents that combined unreimbursed costs total

28   $199,609.47, and include filing fees, court reporter and transcript fees, copy charges,

1   investigation fees, mediation fees, postage fees, research fees, expert and consultant fees and

2   travel costs to hearings and mediation.  Mot. Fees at 28; Perez Decl. ¶ 17.  Plaintiff's counsel

3   requests a total of $200,000, taking account of modest additional costs and expenses for travel to

4   the final approval hearing.  *Id.*  Defendant has agreed to pay for these costs as part of the

5   negotiated fees.  *Id.*  Courts approve these sorts of costs for reimbursement.  *See Barbosa*, 297

6   F.R.D. at 454 (costs associated with travel and photocopying as well as mediation fees are

7   "routinely reimbursed"); *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-MMA (NLS),

8   2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving class counsel's costs, which

9   included "court filing fees, research costs, mediation-related expenses, attorney services costs,

10   and travel expenses").  The court finds the costs requested here are reasonable.

11   IV.   <u>CONCLUSION</u>

12          For the reasons set forth above, plaintiff's motion for attorneys' fees, costs and

13   expenses and a class representative enhancement payment, ECF No. 80, and motion for final

14   approval of the class settlement, ECF No. 81, are GRANTED.

15          This order resolves ECF Nos. 80 and 81.  The Clerk of Court is directed to CLOSE

16   the case.

17          IT IS SO ORDERED.

18   DATED:  September 15, 2020.

19

20                                                    _____

21                                          CHIEF UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28